A. C. ALLEN v. HERRICK HARDWARE COMPANY.

Decided April 14, 1909.

**1.—Contract—Written Contract—Contemporaneous Verbal Agreement.**

When parties reduce their contracts to writing such writing is to be taken as embodying all previous negotiations and understandings about its terms, and they can not be varied by parol; but the rule does not apply where it can be made to appear that the instrument was not intended to be a complete and final settlement of the whole transaction.

**2.—Note—Final Settlement—Intention.**

A note given for an amount stated by the payee to be due, was not a final settlement between the parties if they did not intend that it should be.

**3.—Evidence—Writen Contract—Parol Agreement.**

A verbal promise by one of the parties at the making of a written contract, if it was used to obtain the execution of the writing, may be given in evidence.

**4.—Pleading—Note—Equitable Defense—Parol Agreement as to Credits.**

An answer, in a suit by the payee to recover on a note, alleging that the note was given for the amount stated by the payee to be due him on account of various transactions; that the maker signed the note in order to relieve the payee from financial stress; and was induced thereto by the verbal agreement and promise of the payee that there should be an accounting between them, and that if the note was in excess of the indebtedness of the maker the latter should have credit on the note for such excess, and that the amount for which the note was given was in excess of what the maker owed in a certain sum, set up an equitable defense and it was error to sustain a demurrer thereto.

Error from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*Masterson, Atkinson & Masterson,* for plaintiff in error.

*Baker, Botts, Parker & Garwood,* for defendant in error.

FLY, ASSOCIATE JUSTICE.—This is a suit on a promissory note for $3,640.20, together with interest and attorney's fees, instituted by defendant in error against plaintiff in error who answered that the note was given under a verbal agreement that there should be an ac-

counting between the maker and payee on a later date, and if the note did not represent the true balance between them, or if the note was in excess of the indebtedness of the maker, the latter should have credit for the excess; that the amount was in excess of what the maker owed in the sum of $1500. Plaintiff in error also pleaded in offset an account for $845, for guns, pistols, wagons and "sundry articles," and asked that the $1500 excess and $845 account be deducted from the amount of the note. Plaintiff in error also pleaded that he was not liable for $400 claimed in the suit.

It was alleged in the answer that the note was given for implements, harness, cutlery, mules and other things, and further alleged: "That on the day said note was given J. W. Orand, who, as plaintiff is informed and believes, if not the largest is one of the largest owners of the said Herrick Hardware Company, came to Houston with a purported statement of this defendant's account with said Herrick Hardware Company for business done by him with them at Whitney, Morgan and Blum, Texas, said account being very long and consisting of many items, the correctness of which could only have been ascertained by a long and thorough audit of same, by comparison with orders given by this defendant to said Hardware Company. That all the said machinery, implements and other articles bought by this defendant from said Hardware Company were bought for and used upon the ranch and farm of said defendant and his mother, situated in Bosque County, Texas, and at said ranch and farm were all the papers, account slips and all statements sent by the Herrick Hardware Company to this defendant, growing out of orders given and purporting to show how the orders were filled, and without which it was impossible for this defendant to know with any degree of certainty the correctness or incorrectness of the account as presented.

"That when said purported account was presented to this defendant with the request that he give to the Herrick Hardware Company a note for the amount of said account, this defendant stated to said Orand, who has charge of the Morgan House of said Hardware Company, that this defendant had no means of testing the accuracy of the account because all papers pertaining to the same were at his farm and ranch in Bosque County, Texas, and further made known to said Orand that there were certain credits due this defendant for merchandise bought by the Herrick Hardware Company of this defendant, consisting of certain guns, pistols, rifles and other articles, for which there appeared to be no credit on the account, but said Orand insisted that these matters could all be adjusted hereafter, that personally he knew nothing about these matters as they occurred with the Whitney house, and that the Herrick Hardware Company and this defendant had done business together for a great many years and that said Hardware Company was in very straightened circumstances and had not been able to collect but a very small percent of what was owing it and that it was in a position where its doors could be closed by its creditors unless it got immediate help; and that as defendant's was one of the largest, if not the largest account they had out, if they could get a note for the amount it would put it in a position to do something to protect itself from harsh action by creditors, said

Orand stating that if the defendant would give him said note it would probably aid said Hardware Company very materially in being able to resist the pressure that was being brought to bear on it by persons to whom it was indebted, and that it was not a question of months or weeks but a question of days in which it must have help or suffer the consequences, and asked defendant to sign said note and take up the matter of adjustment of the difference between them, and promised in behalf of said Company they would do so later on, saying that as those transactions wherein this defendant was entitled to credits were with the Whitney house, he knew it would do what was right in the matter.

"That it was on these representations of the strained financial condition of plaintiff and its inability to meet the demands of its creditors and of the promise by plaintiff as aforesaid to take up and adjust any difference between plaintiff and defendant that this defendant executed the note sued upon, defendant believing that plaintiff might not be able to withstand the pressure brought to bear upon it unless it obtained said note immediately, and for this reason and the reasons aforesaid and for the purpose of trying to prevent plaintiff being placed in an embarrassing position, that defendant executed said note without any knowledge of its correctness as to amount.

"Defendant avers that by reason of the facts alleged, said note represents more than this defendant owes said Hardware Company, and that while said note was given and intended to settle the account of this defendant, it was only intended to pay what defendant actually owed said Herrick Hardware Company, and that as to any balance over and above what defendant owed it, defendant would be protected by said Herrick Hardware Company; in other words, said note to the extent it exceeds the amount defendant owed plaintiff, is as to such excess, which as defendant is informed and believes is, to wit: $1500, accommodation paper.

"Thereafter, to wit, November 12, 1907, W. T. Herrick of Whitney, Texas, one of the proprietors of said Herrick Hardware Company came to Houston and brought with him the note herein sued on and stated to defendant that, owing to the bank panic then existing and owing to the fact that they would have to negotiate the note elsewhere than at Whitney, unless the note was secured, the Herrick Hardware Company could not handle the same and get the benefit of it. Said Herrick stated to defendant that the Herrick Hardware Company was right at the point where it could go no further without financial assistance; that it was being crowded very much by its creditors and particularly by creditors to whom it owed on money loaned. Said Herrick represented to this defendant that it was now not a question of days but only perhaps one day before the creditors would take harsh measures unless they could raise money. That it had a note for ten thousand ($10,000) dollars due the Provident National Bank in Waco, and that said bank was crowding said Hardware Company and had indicated to said Herrick that it would only wait until the next day or would take action against plaintiffs.

"Defendant having given the note to said plaintiff was under no obligation whatever to secure the same in any way, but believing the

representations made by said Herrick and believing that the Herrick Hardware Company was in danger of being pressed to such an extremity as would operate to close its doors for business, said defendant suggested to said Herrick to ring up the Provident National Bank in Waco and see if he could not get said bank to extend the time a day or two longer, in order that this defendant might consider what security he could get up or offer to said Herrick to assist him in putting the note in such shape that he could handle same and get relief by means of it. Said Herrick thereupon told this defendant he would go to the telephone office and ring up the Provident National Bank of Waco and see if he could get said bank to wait for a day. About two hours after, said Herrick returned to the office of this defendant and made known to him that he had gotten in communication over phone with the Provident National Bank of Waco and while they were very impatient and very stern with him, it had consented to wait another day but this was final and no further or other delays would be tolerated or considered. Thereupon, and being influenced thereby and with the purpose to help plaintiff and at great inconvenience to defendant himself, this defendant executed the deed of trust referred to in plaintiff's petition in order to enable plaintiff to handle said note and assist said Herrick Hardware Company and prevent its doors being closed, plaintiff having its attention called by defendant to the fact that defendant had had no opportunity to examine said account or have the same audited by reason of the fact that the account was handed to him in Houston, was very lengthy and represented many business transactions, while all the papers, vouchers, data, etc., necessary to audit said account were at defendant's farm and ranch in Bosque County; that whatever difference there might be in defendant's favor would be adjusted by said Hardware Company, it being the understanding and the intention of both plaintiff and this defendant that this note was not binding or operative any further than as to the amount defendant actually and honestly owed said Hardware Company upon an after checking of the account and ascertaining the true amount."

The answer set up a valid equitable defense to the claim and the court erred in sustaining a general demurrer thereto. While the cross-action of plaintiff in error may have been founded on an unliquidated demand which could not have been pleaded as an offset to the promissory note, still there was in the matter herein copied an equitable defense to the demand of defendant in error, concerning which plaintiff in error should have been permitted to introduce evidence to sustain the allegations of a contemporaneous agreement that certain claims of the maker should be allowed in a settlement of the note. The evidence would not vary the terms of the contract embodied in the note. "A parol agreement made at the time when a note was given, that a certain claim should be allowed as a credit and be entered as such on the note, which was not done, is not liable to the objection that it was a contemporaneous understanding that would vary the terms of the written contract." (Nalle v. Gates, 20 Texas, 315.)

It is the rule that when parties reduce their contracts to writing such writing is to be taken as embodying all previous negotiations

and understandings about its terms, and they can not be varied by parol, but the rule does not apply where it can be made to appear that the instrument was not intended to be a complete and final settlement of the whole transaction. It was held in a Pennsylvania case, and approved by the Court of Appeals of Texas in James v. King, 2 Willson, section 544, as follows: "A verbal promise by one of the parties at the making of a written contract, if it was used to obtain the. execution of the writing, may be given in evidence." (Powelton Coal Co. v. McShain, 75 Penn. St., 238.) In this case it was alleged that plaintiff in error was induced to execute the note by the promise that there should be an adjustment of the accounts between the parties and credit allowed for what was due to plaintiff in error, and proof of those facts did not tend to vary the written contract, but rather to explain it, and place the parties on the plane upon which they contracted with each other.

If it could be held that by the strict letter of the law plaintiff in error should not be allowed to offer proof entitling him to credits on the note because the note was evidence of a full settlement, a court of equity would come to the relief of the maker of the note and permit him to show that the note was not intended as a full settlement between the parties, but that it had been agreed that there should be a further settlement in which the maker of the note should have the benefit of credits claimed by him. To hold otherwise would be to allow defendant in error to profit by an ironclad rule and obtain from plaintiff in error something which is not justly due him. The note is still in the hands of the original payee and if it was executed under the circumstances alleged in the answer, proof of the indebtedness of the payee to the maker of the note should be allowed as a credit on the note. The note was not a final settlement between the parties, if they did not intend that it should be. The entire contract was not placed in writing and under such circumstances the whole contract can be proved by parol testimony. (1 Greenl. Ev., 284a.)

It follows that the general demurrer should not have been sustained to the answer and that the continuance should have been granted in order to obtain evidence to sustain the allegations of the answer. It is probable that the questions raised as to the attorney's fees will not arise on another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Application for writ of error dismissed for want of jurisdiction.