CHALK et ux. v. DAGGETT. (No. 8832.)

(Court of Civil Appeals of Texas. Ft. Worth. April 6, 1918. Rehearing Denied May 11, 1918.)

1. EVIDENCE ☜441(11) — PAROL EVIDENCE RULE.

In action on note, contemporaneous oral agreement that at time of execution of note

nothing was due plaintiff because of a sum due to defendant upon a proper accounting could not be shown.

2. APPEAL AND ERROR ⊕═1040(7)—SUSTAINING OBJECTION TO PLEAS—HARMLESS ERROR.

Where defenses presented in defendant's pleas to which objections were sustained were substantially presented in other paragraphs of answer to which court sustained no exception, so that substantially the same evidence and defense were available, defendant was not deprived of any substantial right.

3. HOMESTEAD ⊕═213—PLEADING.

Since defendant was not entitled to entire section as a homestead, court was not bound to recognize her plea of homestead, where she did not point out specific 200 acres that constituted her homestead.

4. HOMESTEAD ⊕═162(1) — ABANDONMENT — EVIDENCE.

Where only dwelling shown to have been upon homestead was removed, and there was no evidence of any intention to return building or build a new one, and the husband had purchased, occupied, and used homesteads in other places for long periods of time, intention to return will be held to have been abandoned.

5. HUSBAND AND WIFE ⊕═133½—SEPARATE PROPERTY OF WIFE—QUESTION OF FACT.

In action on notes in which it was sought to foreclose trust deed alleged to have been given to secure notes, evidence held to raise issue whether realty was separate property of defendant wife.

6. TRUSTS ⊕═81(2)—RESULTING TRUSTS.

Where wife out of her own separate property furnished all money invested in land, a resulting trust existed as between husband and wife which in legal effect vested equitable title in wife.

7. TRUSTS ⊕═356(1)—RESULTING TRUST — TRANSFER OF PROPERTY.

Right of defendant wife who furnished all money paid for land would be superior to that of plaintiff, to whom defendant husband gave trust deed on land, unless wife was party to deed or plaintiff had no knowledge of her equitable title.

8. HUSBAND AND WIFE ⊕═192—TRUST DEED.

Where husband alone signed trust deed and alone appeared as grantor, that later when correction in description was made a notation thereof was signed by both husband and wife, and separate acknowledgments made by them, would not make the wife a party to trust deed so as to convey her equitable title.

9. TRUSTS ⊕═357(3) — RESULTING TRUST — BONA FIDE PURCHASER—CONSIDERATION.

Where a judgment was rendered against a husband, holding title to wife's land under resulting trust, and another, who as to the debt was a surety only, the surety taking note of husband secured by a trust deed on the wife's land without notice and paying the judgment was a bona fide purchaser as against the wife, but not as to balance of a note which had been given by the husband prior to the trust deed and mentioned therein as being secured.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by John P. Daggett against J. W. Chalk and wife. Peremptory instruction for plaintiff, and defendants appeal. Judgment affirmed in part and reversed in part, and cause remanded.

T. T. Bouldin, of Matador, and Bradley & Burns and A. W. Christian, all of Ft.

Worth, for appellants. Bryan, Stone & Wade, of Ft. Worth, for appellee.

CONNER, C. J. The appellee sought to recover upon two promissory notes executed by J. W. Chalk. One was executed on March 29, 1916, for $2,800. The other was for the sum of $5,069.17 executed on the 20th of December, 1915. Appellee sought to recover the whole of the $2,800 note and the balance alleged to be due upon the other note. The appellee also sought to foreclose a mortgage or trust deed lien upon a section of land in one of the Panhandle counties, which it was alleged had been given to secure the sums sued for.

As developed by the pleadings, stated in substance, J. W. Chalk defended on the ground that the $2,800 note and the trust deed made to secure the same had been executed in order to enable appellee thereby to secure money to discharge a certain judgment against the two, and that the trust deed had been by its terms made to include the balance due upon the $5,069.17 note; that in 1912 and prior and subsequent thereto appellee and J. W. Chalk had been doing business as a cattle commission firm buying and selling stock, loaning moneys, etc., and that there had never been any accounting between the parties, and that at the time of the execution of the $2,800 note and trust deed appellee agreed that an accounting should thereafter be had between them and that J. W. Chalk be allowed credits for all that might be due him upon both notes. As alleged, in substance, said credits would exceed the amount of the notes. The appellant Mary E. Chalk, wife of appellant J. W. Chalk, was made a party, and she pleaded that the section of the land upon which the trust deed was made to operate was her separate property and also her homestead. Upon the conclusion of the evidence the court gave a peremptory instruction to the jury in appellee's favor, and appellants have appealed.

[1] We fail to find reversible error in the action of the court in sustaining appellee's special exception to the allegations in paragraphs 4 and 8 of said answer, wherein defendant attempted to set up contemporaneous oral agreements by the terms of which it was alleged substantially and in legal effect that the defendant Chalk was not to pay said note, etc., in so far as these paragraphs of his answer undertook to establish a defense upon such an agreement. We think they run counter to the rule that the terms of a written contract cannot be varied by parol. Appellants cite in aid of these paragraphs of his answer the cases of Allen v. Herrick Hdw. Co., 55 Tex. Civ. App. 249, 118 S. W. 1157; Seabrook v. First National Bank, 192 S. W. 314; Clayton v. Western National

Wall Paper Co., 146 S. W. 695, and other cases. Some of these cases seem to go very far in the direction of abrogating the well-settled rule referred to, but we nevertheless think they may be distinguished from the case before us. Some of them merely go to the effect that a credit substantially admitted to be due at the time of the execution of the note will be allowed by enforcing an agreement to so do at the time the note is executed. The paragraphs of the answer referred to, as we construe them, go beyond this. Construed as a whole they amount substantially to a plea that at the time of the execution of the $2,800 note nothing whatever was due appellee because of sums due appellant J. W. Chalk upon a proper accounting. The legal effect of the note was an absolute promise to pay a specified sum of money at the date stated. Its legal effect imported an indebtedness, and we do not understand that the courts will entertain and enforce a contract in parol, as such, that would wholly destroy the legal import of the notes sued upon. See Saunders v. Brock, 30 Tex. 422; Ablowich v. Greenville Nat. Bank, 22 Tex. Civ. App. 272, 54 S. W. 794; Dolson v. De Ganahl, 70 Tex. 620, 8 S. W. 321; Hendrick v. Chase Furn. Co., 186 S. W. 277; Luckenbach v. Thomas, 166 S. W. 99; Security Life Ins. v. Allen, 170 S. W. 131; Key v. Hickman, 149 S. W. 275; Standard Wagon Co. v. Roberts, 26 S. W. 246; Bailey v. Rockwall County Nat. Bank, 61 S. W. 530; Matheson v. C–B Live Stock Co., 176 S. W. 734; Long v. Riley, 139 S. W. 79.

[2] Possibly, however, the paragraphs of the answer referred to are more properly to be construed as a plea of failure of consideration or a plea in effect. But if so, these defenses were substantially presented in other paragraphs of the defendant's answer to which the court sustained no exception and under which, so far as we are able to discover from the record, appellants might have been properly allowed to offer proof of the very matters forming the essential basis of the parol agreement relied upon. That is to say, under such other paragraphs evidence would have been admissible of the partnership transactions referred to, and thereunder proof could have been made of any and all sums of money, if any, due appellant J. W. Chalk upon a proper accounting between the partners. No effort to do this, however, was made by appellants, although both appellant J. W. Chalk and appellee J. P. Daggett testified as witnesses upon trial. So that we do not see that appellants were deprived of any substantial defense.

[3] By other assignments appellants insist that the evidence raised the issues of homestead and separate property presented in the pleadings of Mrs. Chalk, and that hence the court was in error in giving the peremptory instruction. As against the homestead claim we find no error in the court's charge. Nei-

ther the pleading nor evidence in our judgment sufficiently presented the issue. J. W. Chalk presented no plea of homestead, and appellant Mary E. Chalk, his wife, merely alleged that the section of land covered by the trust deed "is the section on which their homestead is located and was so located at the time of the alleged date of said deed of trust and for many years prior thereto." No particular part of the section is pointed out in the pleadings as the 200 acres occupied as a homestead. By our exemption laws it is clear that Mary E. Chalk is not entitled to the entire section as a homestead, and the burden was upon her to point out in her pleading the particular 200 acres that constituted her homestead and was occupied and used as such; and not having done so the court was not bound to recognize her plea.

[4] The evidence is equally unsatisfactory. It is to the effect that some time in 1895— some 10 or more years prior to the trial—appellant J. W. Chalk built a house on the section in controversy. The evidence fails to disclose the particular part of the section upon which the house was located, and further shows that it was moved off the section in controversy to another one about 5 years before the trial. With reference to moving away from this section of land Mrs. Chalk testified:

"I don't know whether I can tell just how long it has been since there has been a house on that section of land; it has been several years though. We first moved that house off onto another section. * * * We never lived in the house on the other section of land. We moved to town after moving out of that house. We moved to town to school our children. I couldn't tell you how long ago we moved to town; * * * I reckon it has been 14 years ago, as well as I recollect. * * * We bought a house in Matador and lived there in that home for a few years. * * * After leaving Matador we moved to Roaring Springs."

The evidence of J. W. Chalk was to the effect that after having first lived on the section in controversy they moved away for the purpose of schooling their children; that he owned a home in Matador and lived in it; that later he moved to Roaring Springs on his home there; that he was not living on the section of the land covered by the mortgage at the time it was given, but was living in town at the time. With reference to appellants' home in Roaring Springs the following questions and answers appear in J. W. Chalk's testimony:

"Q. That is a pretty fine home that you have there? A. Yes; it is a comfortable home. I guess it cost $3,500. I will say that it is a pretty good home for that country and country town. Q. You don't claim that fine home in Roaring Springs as your home? A. We don't claim it as a homestead—land to farm on. Yes; it has been about 5 years since this section in question has had a house on it. No; we didn't live out there in a tent."

While it is true that a homestead once acquired will not be presumed to have been abandoned without an intention to so do, yet where it appears as here that the only dwell-

ing ever shown to have been upon the homestead was removed, and there is no evidence of a purpose of returning the building to the place of its former situation or there build a new one, and where it is further shown that the husband in the exercise of his right to designate a home has actually purchased, occupied, and used homesteads in other places for long periods of time, the intention to return, as it seems to us, must be held to have been abandoned. Therefore, as stated, we think appellants have no right to complain of the action of the court in so far as it affected Mrs. Chalk's claim of homestead. Langston v. Maxey, 74 Tex. 155, 12 S. W. 27; Panhandle Nat. Bank v. Emery, 78 Tex. 503, 15 S. W. 23.

[5] We have had more difficulty, however, with her plea that the section was her separate property. We are of the opinion that the evidence raised this issue. The section of land was in the name of her husband, J. W. Chalk, and purchased from the state in 1894, upon the usual terms prescribed by law for the sale of public free school lands. Mrs. Chalk testified, as did also her husband, J. W. Chalk, that it had been purchased with the separate means of Mrs. Chalk. Mrs. Chalk testified:

"I furnished the money to purchase section No. 32 (the one in controversy) at the time it was purchased. Since the purchase of this section of land I have been paying the taxes and interest on it. Mr. Chalk has been paying the taxes on this land, but I have been furnishing him the money to pay the taxes with. * * * Mr. Chalk looks after it and I furnish the money. I have furnished all the money that has been invested in this section of land. * * * I paid for it in money out of my mother's estate. I gave the money to my husband and had him buy the place for me for my homestead."

[6, 7] As between Mrs. Chalk and her husband, therefore, a resulting trust existed which in legal effect vested in her the equitable title. See Levy v. Mitchell, 52 Tex. Civ. App. 189, 114 S. W. 172; Ullman v. Jasper, 70 Tex. 446, 7 S. W. 763; Schuster v. Bauman Jewelry Co., 79 Tex. 179, 15 S. W. 259, 23 Am. St. Rep. 327; O'Farrell v. O'Farrell, 56 Tex. Civ. App. 51, 119 S. W. 899. The right of the wife thus shown is superior to that of appellee based upon his trust deed, unless it has been shown, as is contended, that the wife became a party to the trust deed, or unless appellee, as is also contended, has shown himself to be in the position of a purchaser in good faith without notice of the wife's equitable rights.

[8] Jno. W. Chalk signed the deed of trust in March, 1916, and he alone appears as grantor in the deed. Throughout the deed it purports to be the conveyance of J. W. Chalk alone. Later in October, 1916, it appears that some corrections in the descriptive language of the deed were made. On the deed appears the following notations and signatures: "The above corrections were made by me at Roaring Springs, Texas, October 12, 1916. J. W. Chalk. Mary E. Chalk." Then

follows the certificate of J. W. Chalk's acknowledgment, in Tarrant county, Tex., dated March 29, 1916, and following this is the certificate of Mrs. Chalk's separate acknowledgment, in Motley county, Tex., dated October 12, 1916. From this appellee apparently contends that Mrs. Chalk became a party to the trust deed and therefore that it operated to convey the interest, if any, she had in the land. Mrs. Chalk attacks the validity of her acknowledgment to the deed, but inasmuch as there is no evidence whatever that appellee had notice of any defect in the acknowledgment, we will not discuss this particular phase of the case. We think it sufficient to say that the deed of trust, appearing as it does to be the act of the husband alone, is not sufficient to convey or incumber the property of the wife by the latter's signature and acknowledgement shown in this case. See Stone v. Sledge, 87 Tex. 49, 26 S. W. 1068, 47 Am. St. Rep. 65; Thompson v. Johnson, 24 Tex. Civ. App. 246, 58 S. W. 1030. In the case of Stone v. Sledge, Stone executed a deed to property which was his wife's separate estate. The deed was dated December 6, 1872, and in it his name alone appeared as grantor. In March, 1873, his wife signed the deed and acknowledged it privily before a notary public, and the Supreme Court held that this deed did not convey the wife's separate interest. The court said:

"Upon the question whether one who signs a conveyance is bound by it, although he does not appear upon its face to be a party to the instrument, there is some conflict of opinion; but it seems to us that the great weight of authority is in favor of the proposition that as to such person the deed is wholly inoperative."

In Bank v. Rice, 4 How. 225, 11 L. Ed. 949, Chief Justice Taney says:

"In order to convey by grant, the party possessing the right must be the grantor, and use apt and proper words to convey to the grantee, and merely signing and sealing and acknowledging an instrument, in which another person is grantor, is not sufficient."

It was accordingly held in that case that the deed of the husband, who alone appeared as the grantor, was not sufficient to convey the separate estate of the wife. We think it must be held, therefore, that the mere fact that Mrs. Chalk signed and acknowledged the trust deed at the time and under the circumstances above related will not be sufficient to convey her equitable title, if any she has, in the land described in the trust deed executed by her husband, J. W. Chalk.

[9] But was appellee Jno. P. Daggett, shown to be in the attitude of a purchaser in good faith and without notice of Mrs. Chalk's equitable title, if any, as is insisted? To the extent that the trust deed secures the payment of the $2,800 note declared upon, we think the contention must be sustained. The judgment debt in equity was Chalk's alone. It is conceded that the judgment debt was paid off and discharged by the appellee, Dag-

gett, after the delivery of said note to him, and that Daggett's liability was that of a surety only. It also seems undisputed that Daggett was without any notice of the equitable claim asserted by Mrs. Chalk, and hence we think Dagggett's payment of the judgment and the surrender of his favored position as surety of the husband sufficiently constitutes appellee, Daggett, a purchaser for value and in good faith without notice. He, as to the $2,800 note therefore, is entitled to protection, and as to that note the trust deed securing the same is superior to the equitable claim of Mrs. Chalk. See Hill v. Moore, 62 Tex. 610; Parker v. Coop, 60 Tex. 111; Kirk v. Navigation Co., 49 Tex. 213.

So much, however, cannot be said, we think, as to the amount claimed by appellee on the $5,069.17 note. That note bore date December 20, 1915, and represents an indebtedness existing several months prior to the execution of the trust deed purporting to secure it, and nothing in the record will support the conclusion that it formed a material part of the consideration for the agreement to execute the trust deed. It seems well settled in the law that an antecedent indebtedness will not constitute a sufficient consideration to protect the creditor against the equitable title here claimed by Mrs. Chalk which is not controlled by our registration statutes. See Spurlock v. Sullivan, 36 Tex. 511; Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; Pride v. Whitfield, 51 S. W. 1101.

It follows that the judgment in favor of appellee for the sums due and payable by the terms of the $2,800 note declared upon should be affirmed, but the judgment in so far as it foreclosed the trust deed lien upon the section of land in controversy to secure the balance shown to be due on the $5,069.17 note declared upon should be reversed and the cause remanded, to the end that the issue presented by the wife's plea of separate ownership in the section may be properly determined.

Judgment affirmed in part and reversed in part.