**DUVAL et al. v. W. T. CARTER & BRO.**

**No. 4479.**

Court of Civil Appeals of Texas. Beaumont.

Dec. 4, 1947.

Rehearing Denied Jan. 7, 1948.

A. M. Huffman and Geo. P. Kirkpatrick, both of Beaumont, and Grover C. Lowe, of Woodville, for appellants.

Baker, Botts, Andrews & Walne, of Houston, and J. E. Wheat, of Woodville, for appellee.

**MURRAY, Justice.**

This is a suit in trespass to try title which was filed in the district court of Tyler County by Claude Park Duval and others against W. T. Carter and Brother, a partnership, for recovery of title and possession of an undivided 10.5 per cent interest in the G. L. Martin 640 acres survey in Tyler County. The case was tried before the court without a jury. Judgment was rendered that plaintiffs take nothing by their suit, and they have duly perfected their appeal to this court.

The appellants here, (plaintiffs in the trial court) requested findings of fact and conclusions of law and in response thereto the court filed the following findings and conclusions:

"Findings of Fact

"1. This is a suit in trespass to try title, which was filed by plaintiffs against defendants on February 13, 1944, in which plaintiffs seek to recover title to and possession of an undivided 10.5% interest in and to the G. L. Martin Survey, abstract No. 452, in Tyler County, Texas, containing 640 acres, more or less, which was granted by the State of Texas to G. L. Martin on September 16, 1847.

"2. The plaintiffs did not offer any evidence of title by limitation, prior possession or from a common source. Plaintiffs sought to recover the interest sued for by deraigning their title from the State of Texas. From the evidence introduced in the trial of this case, these facts appear: That G. L. Martin died during the year 1865; that the said G. L. Martin was married twice; that of the first marriage six children were born who reached maturity, namely, Mary F., who married J. R. Loughridge; Angeline (A. E.), who married Dan Donaldson; Emiline, who married John A. Lockhart; Julia, who married T. B. Conner, L. L. Martin and G. L. Martin, Jr.,; that of the second marriage of G. L. Martin, two children were born, namely, B. J. Martin and Pauline, who married P. H. Cullen; that the said L. L. Martin, one of the sons of the said G. L. Martin by his first wife, died intestate and left as his sole heir at law his daughter Lora Martin, through whom the plaintiffs in this case claim title.

"3. There is no evidence as to when G. L. Martin and his first wife were married, as to when said first wife died, as to when G. L. Martin and his second wife were married or as to the date of the death of the second wife. About 17 or 18 years elapsed between the issuance of the patent of the Martin survey to G. L. Martin in 1847 and the death of Martin in 1865. It cannot be determined from the evidence introduced in the trial of this case whether the G. L. Martin survey was the community property of G. L. Martin and his first wife or the community property of G. L. Martin and his second wife. By deed dated April 8, 1895, Lora Martin, the only heir of L. L. Martin, purported to convey to Sam Rochester an undivided 93⅓ acres of the G. L. Martin survey. The plaintiffs in this suit claim as collateral heirs of Sam Rochester or as devisees under the will of the said Sam Rochester. There is no evidence that the said Lora Martin obtained any title to any interest in the Martin survey excepting such interest as she inherited from her father, L. L. Martin. There is no evidence as to whether the first wife or the second wife of G. L. Martin had or did not have children by a marriage or marriages to some person or persons other than G. L. Martin, the record being silent as to whether either of those wives was married more than once. From the evidence pertaining to the marital and family history of G. L. Martin and his two wives it cannot be determined whether the said Lora Martin inherited through her father as much as 93⅓ acres, undivided, in the Martin survey.

"4. Sam Rochester, the grantee of Lora Martin, died in Webster Parish, Louisiana, on or about November 17, 1902. The said Sam Rochester left a will, which was admitted to probate in Webster Parish, Louisiana, and duly exemplified copies of said will and of the probate thereof and of the inventory of the estate of said testator were introduced in evidence by the plaintiffs. The will of Sam Rochester has not been probated or filed for record in Texas. The interest of Sam Rochester in the G. L. Martin survey was not specifically devised, but by the residuary clause of his will the testator devised all the residue of his estate to those who, under the laws of descent and distribution of the State of Texas, would have taken as his heirs at law. The said Sam Rochester was never married, and at the time of his death both his father and mother were dead. Those who constituted the heirs at law of the said Sam Rochester upon his death were the following: Carrie A. Ventress (wife of Shelly Ventress), a sister; Julia Whitehead (wife of W. J. Whitehead), a sister; Marshall Rochester, a brother; Willie B. Rochester (wife of Hardy Taldon), the only heir of William Rochester, a deceased brother of Sam Rochester; John G. Lane and Lola Lane, the children and only heirs at law of Bettie Rochester Lane, a deceased sister of the said Sam Rochester; Hattie

Woods (wife of Jim Woods) and Maude L. Woods (wife of J. R. Woods), the descendants and only heirs of Eliza Geren Vick, a deceased sister of the said Sam Rochester; and Carrie Greengard (wife of Mike Greengard); Edna R. Dewing (wife of A. J. Dewing) and J. W. Williams, the children and only heirs at law of Mollie Rochester Williams, a deceased sister of the said Sam Rochester. The plaintiffs in this case claim jointly 5/7 of the interest which Sam Rochester had in the G. L. Martin survey, the plaintiffs collectively having succeeded to all of the estate of the abovenamed persons who constituted the heirs at law of the said Sam Rochester at the time of his death, excepting only Carrie A. Ventress, a sister of Sam Rochester, and Marshall Rochester, a brother of Sam Rochester.

"5. The evidence introduced in the trial of this case shows that the defendants own title to a substantial undivided interest in the G. L. Martin survey which was derived from sources independent of L. L. Martin, Lora Martin and Sam Rochester.

"6. On June 20, 1906, judgment was rendered in the district court of Tyler County in cause No. 2858, styled 'The State of Texas v. Sam Rochester, et al'. That was a suit to foreclose a tax lien for delinquent taxes covering a number of years on two undivided interests in the G. L. Martin survey, one an undivided 93 1/3 acres and the other an undivided 187 acres. The judgment recited that the defendants were served with citation by publication as required by law. The judgment ordered a foreclosure of the lien of the State and authorized a sale of the property to satisfy said lien, subject to the statutory right of redemption at any time within two years after the date of the sale. On September 4, 1906, the sheriff of Tyler County, Texas, executed a deed in favor of Monroe Reese, which recited that a sale had been made pursuant to said judgment and an order of sale issued out of the district court. Said deed contained pertinent recitals, including the recitation that Monroe Reese had become the purchaser at the sale held by the sheriff. The order of sale and return of the sheriff thereon were not introduced in evidence, but defendants offered

satisfactory proof showing that many records in the office of the district clerk were missing and that a thorough search for such order of sale and sheriff's return had been made and that the same could not be found. The title so conveyed by the sheriff of Tyler County to Monroe Reese passed through a regular chain of conveyances to defendants in this case. When said tax judgment and sheriff's deed pursuant thereto were offered in evidence, the plaintiffs objected to the judgment on the ground that it appeared from the face thereof that an attempt was made by the State to foreclose its tax lien on two tracts of land in solido and objected to the introduction of the sheriff's deed for the same reason and on the further ground that no order of sale had been offered in evidence.

"7. Defendants offered in evidence a deed dated August 31, 1908, which was executed by Marshall Rochester and others, as grantors, in favor of Monroe Reese, which purported to convey an undivided 93 1/3 acres in the G. L. Martin survey, in consideration of $186 paid in cash by the grantee. The body of said deed, including the signatures and excluding only the field notes of the Martin survey, is in words and figures as follows:

" 'The State of Texas ⎱
County of Tyler ⎰

" 'Know All Men by These Presents:

" 'That Shelly Ventress joined by his wife, Carrie A. Ventress, and Marshall Rochester being the only heirs at Law of Sam Rochester, deceased, of the Parish of Webster, State of Louisiana, for and in consideration of the sum of One Hundred and Eighty Six Dollars, to us in hand paid by Monroe Reese, the receipt we fully acknowledge have Granted, Sold and Conveyed; and by these presents do Grant, Sell and Convey, unto the said Monroe Reese of the County of Tyler, State of Texas, all that central track or parcel of land situated in the County of Tyler in the State of Texas, and being ninety three and one third acres of land undivided in and out of the G. L. Martin Survey, said Survey containing 640 acres and is described as follows:

" 'To Have and to Hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Monroe Reese his heirs and assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators, to Warrant and Forever Defend, all and singular the said premises unto the said Monroe Reese his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

· ·" 'Witness our hands at Lamesville, La. this 31st day of August A. D. 1908.

" 'Witness at Request of Grantor:

" 'O. L. Noles N. P.

" 'Gus Ventress

M. Rochester
Carrie A. Ventress
Shelly Ventress
Edna R. Dewing
    (San Francisco)
A. J. Dewing
    (San Francisco)
Carrie Greengard
    (San Francisco)
Mike Greengard
    (San Francisco)
J. W. Williams
    (San Francisco)
J. R. Woods
M. L. Woods
Jim Woods
Hattie Woods
Lela R. Lane
Jno. G. Lane
Willie B. Talton
J. H. Talton
Julia A. Whitehead
W. J. Whitehead'

"Said deed was regularly acknowledged by all of those who signed the same, excepting only Edna R. Dewing and Carrie Greengard, the certificates as to whose acknowledgements were not statutory. The original certificate of acknowledgement as to Carrie A. Ventress, dated August 31, 1908, was fatally defective, but a correct certificate, dated November 25, 1908, was affixed to said deed in Webster Parish, Louisiana, by the same officer who took the original acknowledgement of Carrie A.

Ventress. Between those two dates, the other parties whose names were signed thereto signed and acknowledged said deed at the following times and places: Edna R. Dewing and husband, A. J. Dewing, Carrie Greengard and husband, Mike Greengard, and J. W. Williams, San Francisco, California, on September 11, 1908; John G. Lane and Lela R. Lane in Cottle County, Texas, on October 16, 1908; Jim Woods and wife, Hattie Woods in Camp County, Texas, on October 8, 1908; Willie B. Talton and husband, J. H. Talton, in Hill County, Texas, on October 20, 1908; and Julia A. Whitehead and husband, W. J. Whitehead, in Tarrant County, Texas, on October 24, 1908.

"On August 31, 1908, the same day of the execution of said deed by Marshall Rochester and Carrie Ventress and husband, the said Marshall Rochester and Carrie Ventress made an affidavit in Webster Parish, Louisiana, before O. L. Noles, the notary who took their acknowledgements to said deed. Said deed and affidavit were filed for record in the office of the county clerk of Tyler County, Texas, on December 16, 1908, and are both recorded in the same volume of the deed records. The affidavit referred to above set out the purported facts as to the heirship and family history of Sam Rochester. Said affidavit was introduced in evidence by the plaintiffs in the trial of the case.

"8. By deed dated November 28, 1913, the said Monroe Reese conveyed to defendants W. T. Carter and Brother an undivided 93 1/3 acres in the G. L. Martin survey. At all times since 1913, the defendants have asserted title to, have openly exercised exclusive dominion over, and have annually rendered for taxes and have annually paid before delinquency all taxes on the entire G. L. Martin survey, including the interest for which plaintiffs sue. Throughout said period from 1913 until the filing of this suit, none of the plaintiffs or · those through whom they claim title made any claim to any part of the land in the Martin survey, or exercised any dominion over the same, and (with exception of a payment of the tax collector by one of the attorneys for plaintiffs a short time before this suit was filed)

none of them made any payment of taxes on any land in the Martin survey at any time since 1913.

"9. At the time of his death, the said Sam Rochester owned property of considerable value, consisting of real estate and personal property in the State of Louisiana and a small undivided interest in the G. L. Martin survey in Tyler County, Texas. The inventory and appraisement of the estate of Sam Rochester shows that the value of the personal property belonging to the estate which was not specifically bequeathed by the will of Sam Rochester was approximately $4,000.

"10. At the time of the trial of this case, Monroe Reese and all of the parties whose names were signed to said deed of August 31, 1908, were dead, excepting only Hattie E. Woods and Lela Lane Byrom (formerly Lela Lane). Plaintiffs caused the depositions of both Hattie E. Woods and Lela Lane Byrom to be taken in this case, but no interrogatories were propounded to either of said witnesses respecting the deed of August 31, 1908, or as to the partition and distribution of the estate of Sam Rochester.

"11. When the deed in favor of Monroe Reese, dated August 31, 1908, was signed and acknowledged by the different parties whose names did not appear in the body of said deed, said parties so signing and acknowledging the same intended thereby to give their consent, respectively, for Marshall Rochester and Carrie Ventress and her husband to convey to the said Monroe Reese the entire undivided 93 1/3 acres of land described in said deed, and all of said parties whose names did not appear in the body of said deed intended at the respective times when they signed and acknowledged the same to ratify and confirm the sale of said land made by Marshall Rochester and Carrie Ventress and husband to Monroe Reese. All of said parties whose names did not appear in said deed and those claiming under them have acquiesced in said conveyance by Marshall Rochester and Carrie Ventress and husband to the said Monroe Reese for a continuous period of more than thirty years, during all of which time said parties whose names

did not appear in said deed and those claiming under them had notice or were charged with notice that the said Monroe Reese and those claiming title through him were asserting title to and claiming and exercising dominion over and paying taxes on all of the land purporting to have been conveyed by said deed of August 31, 1908.

"12. During the period of twenty-five years next preceding the filing of this suit, the plaintiffs and those through whom they claim did not exercise any dominion over any part of the land in the G. L. Martin survey and did not during the said twenty-five year period pay any taxes on any part of said land; and during the period of twenty-five years next preceding the filing of this suit, the defendants and those whose estate they own have openly exercised dominion over and asserted claim to all of the land in the G. L. Martin survey and annually rendered the same for taxes and annually paid the taxes thereon before the same became delinquent. A short time before this suit was filed, one of the attorneys for plaintiffs, in anticipation of the filing of this suit, paid to the tax collector of Tyler County, Texas, a sum of money equivalent to the taxes for one year on 10.5% undivided interest in the G. L. Martin survey, but said sum was paid by said attorney to said tax collector after defendants had duly rendered the whole of said survey for taxes and had paid to said tax collector all of the taxes assessed against the entire G. L. Martin survey for the same taxable year.

"Conclusions of Law

"1. In view of the fact that the heirs of Sam Rochester whose names did not appear in the body of the deed of August 31, 1908, in favor of Monroe Reese had notice or were charged with notice that by said deed Marshall Rochester and Carrie Ventress and husband were purporting to convey to the said Monroe Reese all of the interest of the Sam Rochester heirs in the G. L. Martin survey and in view of the consent to and ratification of such sale and conveyance in the body of said deed, as evidenced by their signing and acknowledging said deed and acquiescing in such conveyance for more than thirty years,

it is concluded that plaintiffs, at this late date, are not entitled by this suit to repudiate such consent and ratification and recover an interest in the Martin survey.

"2. It is concluded that since the tax foreclosure and sale in the case of The State of Texas v. Sam Rochester et al, No. 2858 in the District Court of Tyler County, Texas, was a foreclosure and sale through a judicial proceeding in the district court and was not a mere summary sale by the tax collector, said tax judgment and deed are not subject to the collateral attack made thereon by the plaintiffs in this case, and that through said foreclosure and sale pursuant thereto, title passed to Monroe Reese, the purchaser of such tax sale.

"3. It is concluded that the evidence in this case fully sustains all elements of defense under Article 5519a, Vernon's Annotated Civil Statutes, which statute was specially pleaded by defendants.

"4. It is concluded that the deed of August 31, 1908, in favor of Monroe Reese, even if not as good as a conveyance by the Rochester heirs whose names did not appear in the body thereof, was good and valid as a contract to convey as to all of said parties, excepting only Carrie Greengard and Edna Dewing, the certificates of acknowledgement as to the latter two parties having been defective; and that such defense is not subject to the pleas of laches and limitation pleaded by plaintiffs.

"5. In view of the fact that the plaintiffs seek in this cause to recover an undivided interest in the G. L. Martin survey and since the evidence shows that the defendants are not trespassers but own a substantial undivided interest in said survey, independent of the Sam Rochester title, and since the plaintiffs failed to show with reasonable certainty what undivided interest in said survey was inherited by Lora Martin and by her conveyed to Sam Rochester, it is concluded that the plaintiffs are not entitled to recover any interest in said survey as against the defendants.

"6. It is concluded that since plaintiffs offered no evidence showing whether they or those through whom they claim as heirs of Sam Rochester received their fair shares of the estate of Sam Rochester, they are not entitled to recover the small interest in the former common property here sued for, which was conveyed to Monroe Reese by the cotenants Carrie Ventress and Marshall Rochester.

"7. It is concluded finally that plaintiffs are not entitled to recover any interest in the land for which they sue and that they are not entitled to any judgment against the defendants."

The appellants in their brief assail as erroneous all the conclusions of law except the final one, which is in fact only a general conclusion that plaintiffs ought not to recover. They complain only of finding of fact number eleven, and assert that such finding is not supported by the evidence. All other findings of fact are taken as correct.

The appellants, by their first group of points, contend that the deed to Monroe Reese of August 31, 1908, signed by the heirs of Sam Rochester, but naming only two of them in the body of the deed as grantors, served only to pass title to Reese of the interest in such land owned by the two heirs whose names appear in the body of the deed as grantors; that the appellants, being the parties who signed said deed whose names did not appear in the body thereof (and the heirs of such parties) are still the owners of 5/7ths of the 93 1/3 acres, undivided, out of the 640 acre G. L. Martin survey. They contend that under the doctrine of Stone v. Sledge, 87 Tex. 49, 26 S.W. 1068, which is followed in Chalk v. Baggett, Tex.Civ.App., 204 S. W. 1057; Jackson v. Craigen, Tex.Civ.App., 167 S.W. 1101; Rippy et al. v. Harlow et al., 46 Tex.Civ.App. 52, 101 S.W. 851, and LeBlanc v. Jackson, Tex.Com.App., 210 S.W. 687, the signing of such deed by appellants and their ancestors was of no effect as to them. We do not believe that the rule announced in Stone v. Sledge, supra, applies to the facts of this case. All of the parties who signed the deed in question were cotenants, all having inherited their interest in the land in the Martin survey from Sam Rochester. It is well settled that if one or more of several cotenants execute an instrument such as a deed or a lease purporting to affect the

ownership in the entire estate, the remaining cotenants may by some act of ratification or by acquiescence make such instruments effective to alienate their rights in the entire estate. Texas & Pacific Coal & Oil Co. v. Kirtley, Tex.Civ.App., 288 S.W. 619, and cases therein cited; Van Deventer v. Gulf Production Co., Tex.Civ.App., 41 S.W.2d 1029; Harrison Oil Co. v. Sherman, Tex.Civ.App., 66 S.W.2d 701; Broadstreet et al. v. Carter et al.,[1] by this court, in which writ of error was recently refused. The deed under consideration contains a recital that the two who are named as grantors in the body of the deed are "the only heirs at law of Sam Rochester, deceased" and purports to grant, sell and convey an undivided 93 1/3 acres of land in the G. L. Martin Survey, "being all the land we own or claim in said survey of 640 acres as heirs at law or otherwise". The acts of the various signers whose names do not appear in the body of the deed in signing such an instrument did not alone serve to convey their interest in the land to Monroe Reese, under the holding in Stone v. Sledge, supra, but such acts, followed by acquiescence in the possession by Monroe Reese and those holding under him for over thirty years thereafter unquestionably show that they all had notice of what was attempted to be done by the deed, that they acquiesced in such action and ratified the conveyance of their entire interest inherited from Sam Rochester. Such a holding is not in conflict with the principle announced in Stone v. Sledge, supra, and relied upon by the appellants. It is pointed out that in that case Mrs. Stone held title to the premises in controversy by inheritance; Sledge and others asserted title under a deed executed by Mr. Stone, her husband, in which the name of the husband alone appeared as grantor; Mrs. Stone signed and acknowledged the conveyance some three months after it had been executed by her husband. The court points out in its opinion that the deed by Stone himself evidenced only the attempt to convey Stone's own interest in the property, but he had no interest in the property, and that the wife's signing and acknowledging such instrument later added nothing to the ineffective deed to convey her title. The deed itself contains no intimation that the interest attempted to be conveyed was that of the wife. No acts of cotenants were involved. Clearly the present facts in this case differ in many respects from those present in Stone v. Sledge. We are not in agreement with the construction of the deed as contended for by appellants and points of error presented by them in regard thereto are overruled.

■ The appellants, in another group of points, attack the validity of the tax foreclosure, sale and deed, by which Monroe Reese took a deed from the Sheriff of Tyler County to the 93⅓ acres sold under judgment of foreclosure for taxes. They contend that the judgment and deed are void because two separate interests in the G. L. Martin survey were foreclosed upon and sold under one judgment and sale. The "tracts" of land so foreclosed on and sold were not in fact two separate tracts of land, but were two separate undivided interests, in the Martin survey, one owned by Sam Rochester, an undivided 93⅓ acres and the other owned by S. H. Hurlock, an undivided 187 acres. The tax foreclosure and sale was through a judicial proceeding in the district court. Even if it had been a judgment of foreclosure in bulk against two separate tracts of land it would not have been void for that reason. Stevenson v. Mills, Tex.Civ.App., 14 S.W.2d 94, and cases therein cited; State Mortgage Corporation v. Ludwig, 121 Tex. 268, 48 S.W. 2d 950. We believe it to be in keeping with such holding to say that in this case the sale of two undivided interests in the same survey owned by two different persons is not void as being a sale in solido. We agree with the conclusion of the trial court that such tax judgment and deed are not void; that they are not subject to collateral attack; and that through such foreclosure and sale, title passed to Monroe Reese, the purchaser at such tax sale.

Having determined adversely to appellants the questions involving the construction of the deed of August 31, 1908 and the validity of the tax judgment, sale and deed, and believing that title to the land in ques-

---

[1] No opinion for publication.

tion vested in the appellees through said deeds.and foreclosure, we believe it unnecessary to discuss the other point of error presented by the appellants.

The judgment of the trial court is affirmed.