**LYONS v. TEXORADO OIL & GAS CO. et al.**

No. 4519.

Court of Civil Appeals of Texas. Amarillo.
Dec. 9, 1935.

Rehearing Denied Feb. 17, 1936.

A. A. Lumpkin, of Amarillo, for appellant.

Fischer & Fischer and Madden, Adkins, Pipkin & Keffer, all of Amarillo, for appellees.

JACKSON, Judge.

Texorado Oil & Gas Company, a Texas corporation, on December 1, 1931, was the owner of the oil and gas on and under the north 80 acres of the south 160 acres of section 83, block 46, H. & T. C. Railway Company surveys in Hutchinson county, together with producing gas wells and other improvements, subject to certain overriding royalties which are not involved in this litigation.

On December 17, 1931, in cause No. 1852, styled Oil Well Supply Company v.

Texorado Oil & Gas Company, in the Eighty-fourth district court of Hutchinson county, the plaintiff and several interveners obtained a judgment against the Texorado Oil & Gas Company for the sum of their respective claims, which aggregated approximately $15,000 and for foreclosure of their respective liens against the property. The court directed the property to be sold and the proceeds applied to the payment of the debts, but by partial payment the creditors were induced to withhold the issuance of an order of sale until about January 1, 1933.

On October 15, 1932, in the 104th district court of Hutchinson county, in cause No. 1794, styled Irvan Farrell v. Farrell Associates Incorporated et al., the plaintiff obtained a judgment against the Texorado Oil & Gas Company for $444.89.

In March, 1933, the judgment obtained and the liens foreclosed in cause No. 1852 were, for a valuable consideration, by the owners thereof transferred and assigned to Minnie J. Lyons, and the judgment obtained in cause No. 1794 was also, for a valuable consideration, assigned to her.

On November 28, 1932, in cause No. 2326, in the Eighty-fourth district court of Hutchinson county, styled R. S. Marshall v. Texorado Oil & Gas Company et al., the plaintiff secured a judgment against the Texorado Oil & Gas Company for the sum of $3,589 on which an execution was issued, and at a sale thereunder the property was purchased by R. S. Marshall for the sum of $1.

On June 18, 1933, Minnie J. Lyons caused to be issued on the judgments she had theretofore purchased orders of sale. The property was advertised, sold, and conveyed to her by a sheriff's deed.

On May 8, 1934, in cause No. 427 in equity in the District Court of the United States for the Northern District of Texas, styled Minnie J. Lyons v. R. S. Marshall, the plaintiff obtained a judgment against Marshall decreeing that any title theretofore claimed or asserted by him to the property or the proceeds thereof be annulled.

On July 16, 1934, the Texorado Oil & Gas Company, G. K. Olmsted, Frank Barmettler, O. E. Brueggeman, and W. E. Greenewald, directors of such corporation, as plaintiff, instituted this suit in the Eighty-fourth district court of Hutchinson county against Minnie J. Lyons, defendant, in the form of an action in trespass to try title.

The defendant answered by general demurrer, general denial, plea of not guilty, and by way of cross-action sought judgment for title and possession of the property.

On February 25, 1935, by a first amended original petition, the plaintiffs, in addition to their action of trespass to try title, alleged that in February, 1933, the Texorado Oil & Gas Company began negotiations with the defendant, and on or about March 1st thereafter, acting by and through its said directors, made an oral contract and agreement with the defendant, by the terms of which she agreed to purchase all the judgments, except the one in favor of R. S. Marshall, if the money required did not exceed $14,000, and allow the company to remain in possession, management, and control of the premises, provided the corporation would pay, or cause to be paid, to her, the amount so advanced, together with a bonus of 50 per cent. thereof out of one-half of the proceeds accruing to the company from the production on the property, and upon such payment she would release such indebtedness; that such oral contract was completed and pursuant thereto the defendant acquired such indebtedness and liens; that at the time of this transaction the corporation had not made satisfactory settlement with R. S. Marshall, whose judgment was void and the claim asserted by him excessive, the approximate amount of which did not exceed $1,800, and the corporation had instituted against him cause No. 2413, the object of which was to set aside the purported Marshall judgment and the sale thereunder; that the defendant was in good faith advised of the facts and circumstances relative to the Marshall claim, and said cause No. 2413 was tried in May, 1933, with the defendant present, the corporation prevailed, the judgment and sale were set aside, but on May 29, 1933, a new trial was granted and the suit of the corporation dismissed because it had theretofore defaulted in the payment of its franchise tax to the state, and such default prohibited it from maintaining the suit; that on or about June 1, 1933, the defendant advised the plaintiffs that she had been informed by her attorneys that the most expeditious manner of clearing the property of the Marshall judgment was for her to have orders of sale issued thereon and

the property sold, and, if plaintiffs would consent to such sale, she was willing and able to perform the agreement made in March, and would purchase the property and hold it in trust for plaintiffs, subject to the payment to her of the moneys she had advanced and the bonus she was to receive under the original agreement; this proposition was accepted by the plaintiffs and the property sold to defendant for $3,610, which amount was credited on her judgments; that, by reason of the aforesaid agreements, the defendant holds the property in trust for the corporation, but such trust has been repudiated; on account of such oral contract upon which plaintiff relied, it did not appear at the sale, made no bid on the property, and made no arrangements to secure others to bid thereon or to obtain any money with which to satisfy the judgments; that .the property at the time of the sale was worth $50,000, and the price paid, $3,610, was wholly inadequate, and but for such agreements and their reliance thereon plaintiffs would have bid or secured a bidder who would have paid at least the amount of the judgments; that the proceeds accruing from the operation of the property since the agreements with defendant have not been disbursed, and amounted, at the time of the trial, to approximately $11,471.

The case was tried before the court, without the intervention of a jury, and judgment entered that the Texorado Oil & Gas Company recover from the defendant, Minnie J. Lyons, the equitable title and possession of the leasehold estate burdened in her behalf for the indebtedness due her, aggregating the sum of $20,086.50, to be satisfied out of one-half the proceeds of the production saved and marketed from and after March 1, 1933, from which judgment this appeal is prosecuted.

The appellant presents as error the action of the trial court in rendering judgment against her, asserting that under the record there is a fatal variance between the contract alleged and the contract proved.

The appellees alleged that the Texorado Oil & Gas Company is a corporation and, acting by a majority of its directors Greenewald, Olmsted, Brueggeman, and Barmettler, orally agreed with the defendant, Minnie J. Lyons, on the terms of the contract alleged and relied on.

The testimony shows that neither O. E. Brueggeman nor W. E. Greenewald were directors of the corporation at the time of the agreements. The contract alleged is one that the corporation was authorized to make, and there is no question but that Greenewald and Olmsted were directors with authority to represent the company.

■ Corporations must act by agents, and whether or not the alleged directors had authority to bind appellee corporation at the time the transaction was made becomes immaterial, since the record shows that the corporation acquiesced in the terms and conditions of the oral contract, accepted benefits thereunder, and instituted this suit for the purpose of enforcing the terms thereof. This conduct was such a ratification of such contract as to render it valid and enforceable.

"With reference to a mere absence of authority in a corporate officer to bind the company, ratification is deemed to make good the defect and the corporation is as much bound as if precedent authority had been given." 10 Tex.Jur. p. 912, par. 965.

■ "Ratification," as distinguished from "estoppel," overcomes the objection that the corporate agent had no precedent authority to bind the company. 10 Tex.Jur. p. 389, § 331.

"Except as to intervening rights of strangers, ratification by a corporation of an unauthorized act or contract by its officers or others relates back .to the time of the act or contract ratified, and is equivalent to original authority. The corporation and the other party to the transaction are in precisely the same position as if the act or contract had been authorized at the time." Fletcher, Cyclopedia Corporations, vol. 4, p. 3425, § 2207.

The law as announced in the last foregoing quotation is in effect approved in W. F. Taylor Co., Ltd., v. Baines Grocery Co., 31 Tex.Civ.App. 385, 72 S.W. 260; Peach River Lumber Co. v. Ayers, 41 Tex.Civ. App. 334, 91 S.W. 387 (writ denied); Hill County v. Bryant & Huffman, 118 Tex. 359, 16 S.W.(2d) 513.

The appellant urges as error the action of the court in holding the contract valid and enforceable, because the Texorado Oil & Gas Company had failed to pay the franchise tax due the state on May 1, 1932, and in July thereafter its right to do business in Texas was forfeited.

In reply to this contention, appellee asserts that the proof was insufficient. to show that its right to do business in Texas

had been forfeited at the time the agreements were made, and in any event such issue could be raised only by a plea in abatement.

The testimony, we think, is sufficient to show that the corporation had failed to pay its franchise tax and its right to do business in Texas had been duly forfeited at the time the oral contracts sued on were made. The appellee alleged that, after it had recovered a judgment in May, 1933, in cause No. 2413, setting aside the judgment and sale of the property to R. S. Marshall, a new trial was granted and the cause of the corporation dismissed because it was in default in the payment of its franchise tax, and such default incapacitated it to prosecute the suit.

 The appellee, having alleged such incapacity, had the burden of showing that it had been relieved of such incapacity. This they recognized by proving that the corporation had paid to the state the franchise tax, together with the interest, penalty, and costs, which revived its right to do business in this state and maintain its suits in the courts thereof. It was not incumbent upon appellant, under this record, to raise this issue of incapacity by a plea in abatement.

 The question is whether a contract is void if made by a domestic corporation while its right to do business in Texas is forfeited for failure to pay its franchise tax.

"A contract which has been made without complying with regulatory provisions of statute imposing a penalty for noncompliance is not void where the statute does not expressly so declare. * * * It has been held that contracts made by persons doing business under a fictitious name are not invalidated by their failure to file a certificate of identity as required by statute; * * * and that a failure to comply with the provisions of the statute making it an offense to transfer a second-hand motor vehicle without giving to the purchaser a prescribed bill of sale in duplicate does not invalidate the contract of sale." 10 Tex.Jur. p. 187, § 108. See, also, E. P. Lipscomb & Co. v. Ordonez et al. (Tex.Com.App.) 285 S.W. 1060; Sabine Motor Co. v. W. C. English Auto Co. et al. (Tex.Com.App.) 291 S.W. 1088.

Article 7091, R.C.S., is in part as follows:

"Any corporation, either domestic or foreign, which shall fail to pay any franchise tax * * * shall thereupon become liable to a penalty of twenty-five per cent. of the amount of such franchise tax due by such corporation. If the amount of such tax and penalty be not paid * * * such corporation shall for such default forfeit its right to do business in this State;" and "shall be denied the right to sue or defend in any court of this State, except in a suit to forfeit the charter of such corporation.

"In any suit against such corporation on a cause of action arising before such forfeiture, no affirmative relief shall be granted to such corporation, unless its right to do business in this State shall be revived as provided in this chapter."

Article 7092, R.C.S., among other things, provides:

"Any corporation whose right to do business may have been forfeited, as provided in this chapter, shall be relieved from such forfeiture by paying to the Secretary of State any time within six months after such forfeiture the full amount of the franchise tax and penalty due by it, together with an additional amount of five per cent. of such tax for each month, or fractional part of a month, which shall elapse after such forfeiture; * * * when such tax and all penalties shall be fully paid to the Secretary of State, he shall revive the right of the corporation to do business within this State."

 The statute imposes penalties for failure to pay the franchise tax as provided, one of which is the forfeiture of its right to do business, but it does not declare void business transacted during the time of such forfeiture. The Supreme Court holds that the payment of the tax, interest, and penalty by a corporation, after such right has been forfeited, revives the right to do business and to maintain a suit on a cause of action which arose prior to such forfeiture, saying: "This statute is purely a revenue measure." Federal Crude Oil Co. v. Yount-Lee Oil Co. et al., 122 Tex. 21, 52 S.W.(2d) 56, 61.

"The authorities are not entirely in harmony as to the effect upon contracts made in a business in which a person is engaging without taking out a license or paying a license tax therefor, where the statute or ordinance merely imposes a pen-

alty without expressly prohibiting the business or declaring void acts done or contracts made therein. Whether the imposition of the penalty is intended to be prohibitory is to be determined from a consideration of its nature and terms, and in determining this the following rules have been established and are generally recognized. Where the evident object of the statute or ordinance in requiring a license or tax and imposing a penalty for its violation is for the purpose of police regulation and protection of the public, it will be construed as forbidding, by implication, the carrying on of the business without a license, and a contract made by an unlicensed person in violation of the statute or ordinance is void and unenforceable; and a suit cannot be maintained on such contract, even though payment of the required fee or tax is subsequently made before the suit is brought. Where, however, the object of the statute or ordinance is not for the purpose of regulation and protection, but solely for the purpose of yielding public revenue, the penalty imposed is regarded as being upon the person and not upon the business, and contracts made in the course of the business are valid and enforceable, unless the statute or ordinance expressly prohibits or vitiates them, or unless the business or act itself is unlawful. The question of license in such cases is essentially one between the government, state, or municipality, and the person engaging in business, and is not a matter in which third persons are interested." 37 C.J. p. 260.

■ Since the contract was one within the authority of the corporation to make, the statutes do not declare such contract void because of such forfeiture, the act "is purely a revenue measure," and its right to do business and sue in the courts of the state had been revived, we are of the opinion that the corporation had been relieved from such forfeiture; hence this assignment is overruled.

The appellant assails the judgment of the court, urging that the contract was without consideration, was for the sale and transfer of real estate in contravention of the statute of frauds, and therefore unenforceable.

The pleadings and testimony show a sufficient consideration.

■ It is settled in Texas, by an unbroken line of authorities, that oil and gas in place is real estate, and, if the oral agreement alleged is in violation of the statute of frauds, it is void.

The agreements alleged were in effect that, in consideration of the money advanced and an additional 50 per cent. thereof to be paid as a bonus, the appellant would purchase the claims and liens of certain judgment creditors, cause the leasehold estate to be sold under order of sale, purchase the property, and hold it in trust for the corporate appellee.

At the time appellant acquired the debts and liens and purchased the property at sheriff's sale, the title was vested in the corporation, subject to the discharge of such debts and liens.

The appellant, in support of her contention, relies on the law announced in Williams v. County of San Saba, 59 Tex. 442, Allen v. Allen et al., 101 Tex. 362, 107 S. W. 528, and numerous other cases, the holdings in which are of like import; but of such cases Judge Greenwood says: "The court calls attention in Williams v. County of San Saba, supra, to the fact that the case was not one where real estate had been acquired with the money of one person with a deed taken in the name of another, but was one where the agreement and payment relied on to establish the trust in the real estate transpired after the party sought to be held as trustee had become vested with both the legal and equitable title. 59 Tex. [442] 445. Allen v. Allen, supra, presented a state of facts which disclosed that the person sought to be charged as trustee had, before he made the agreement through which the trust was claimed to arise, become fully invested with title 'by a deed without reservation.' 101 Tex. [362] 365, 107 S.W. 528. The substance of both Williams v. County of San Saba and Allen v. Allen is that when a person once becomes invested with full title to land, legal and equitable, he can convey it only by some writing. But the opinion of Justice Williams in Allen v. Allen recognizes that since James v. Fulcrod, 5 Tex. 512, 55 Am.Dec. 743, it has always been held by this court that express parol trusts can be enforced when they arise under agreements 'existing when the titles vested under the written conveyances and subjecting those titles to the trusts or confidences reposed in those who received them.' 101 Tex. [362] 366, 107 S.W. 528." Johnson et al. v. Smith et al., 115 Tex. 193, 280 S.W. 158, 160.

An oral promise previously made by a party for a valuable consideration to purchase real estate at an execution sale and hold the title in trust for the judgment creditor does not, under our decisions, contravene our statute of frauds (Vernon's Ann.Civ.St. art. 3995), but creates a trust and is enforceable against the party charged as trustee. Brown et al. v. Jackson et al. (Tex.Civ.App.) 40 S.W. 162; Byrnes v. Morris, 53 Tex. 213; Adcock v. Shell (Tex.Civ.App.) 273 S.W. 900; Henderson et al. v. Rushing et al., 47 Tex. Civ.App. 485, 105 S.W. 840; Schultz v. Scott (Tex.Civ.App.) 210 S.W. 830; Holmes v. Tennant (Tex.Com.App.) 231 S.W. 313; Walkup et al. v. Stone et al. (Tex.Civ.App.) 73 S.W.(2d) 912.

Appellant insists that the testimony is insufficient to prove the contract alleged, even if valid. The testimony is sharply controverted on this issue, but was found by the court against appellant, and we are not warranted, under the record, in disturbing such finding.

The judgment is affirmed.