Samuel E. ZIEGLER, Trustee, et al.,
Appellants,

v.

SOUTHWEST FILM LABORATORY, INC.,
Appellee.

No. 7311.

Court of Civil Appeals of Texas.

Texarkana.

Nov. 7, 1961.

Rehearing Denied Dec. 12, 1961.

John L. Burke, Jr., Grady, Johnson & Smith, Dallas, for appellant.

Emil Corenbleth, Marvin Lewis, Dallas, for appellee.

CHADICK, Chief Justice.

This is an action to collect a money indebtedness. The suit was brought by the Trustees of six separate Trusts against Southwest Film Laboratory, Inc. The trial court entered a take nothing judgment without prejudice to the Trusts' right at maturity of the indebtedness to enforce its payment. The judgment is affirmed.

For the most part the evidence developed at the trial was without contradiction. It is mainly with respect to the events associated with and bearing upon a transaction occurring shortly after June 24, 1958, in which a check on the account of Samuel E. Ziegler, Trustee, payable to Southwest Film Laboratory, Inc., was deposited in the cor-

poration's bank account and a check drawn on the corporation's account payable to Samuel E. Ziegler individually and delivered to him, that there is conflict in the testimony. The following recital of the facts relate the evidence in its most favorable aspect in support of the finding of the jury on special issues and the judgment entered by the court.

The enterprise named Southwest Film Laboratory, Inc., came into corporate existence in 1950. In that year J. Manuel Hoppenstein, Samuel E. Ziegler, Irvin Gans and Jack A. Hopper incorporated the business for $6,100 and the four owned all corporate stock. Ownership of the stock at time of suit was held in the following percentage: Hoppenstein 35%, Ziegler 25%, Gans 20% and Hopper 20%. From its creation day to day management of corporate operations was placed in Gans and Hopper. Both were experienced in the business the corporation was engaged in and had been connected with the predecessor organization.

Hoppenstein was a lawyer engaged in general practice and had extensive business interests. Ziegler was a certified public accountant, with a legal education, but limited his practice to tax cases in which his accounting firm was interested. Both Hoppenstein and Ziegler possessed substantial financial resources, and it is apparent from the record their opinions were deferred to in all corporate activity. Hoppenstein was President and Ziegler Secretary-Treasurer, but nominal or no salary was paid to them for service in such capacities. Ziegler's accounting firm was auditor for the corporation, and internal corporate accounting was to a great degree supervised by Ziegler. The four stockholders also constituted the Board of Directors, but corporate policy generally reflected the views of Hoppenstein and Ziegler.

In 1956 the corporation built a new plant. A loan of $110,000 was obtained for this purpose and Hoppenstein and Ziegler guaranteed it, the other stockholders securing

to Hoppenstein and Ziegler their proportionate share of indebtedness by posting collateral.

From the inception of the corporate operation it was a common practice for the stockholders in their individual capacity to loan money at interest to the corporation as needed for working capital. Hoppenstein and Ziegler made the major loans. These loans were of two classes, or were so treated; some were for short terms and repaid promptly, while others were treated as intended for longer duration. A financial statement dated May 31, 1958 prepared by Ziegler's auditing firm showed loans from stockholders as follows: Hoppenstein $19,-500, Ziegler $14,000, Gans $9,100, Hopper $7,950, a total of $50,550. These last mentioned loans were not listed as current liabilities in the financial statement but were carried as a special item of indebtedness from that time onward.

The stockholders on June 25, 1956 entered into the following agreement:

"THIS AGREEMENT made and entered into by and between Samuel E. Ziegler, Irvan Gans, Jack A. Hopper and J. Manuel Hoppenstein of Dallas, Texas, this the 25th day of June, A. D. 1956.

### "WITNESSETH

"WHEREAS, the undersigned are stockholders in Southwest Film Laboratories, Inc., and the said company is in the process of constructing a building for its use at a cost of in excess of $150,000.00; and

"WHEREAS, a loan commitment from the Texas Prudential Life Insurance Company has been procured for only $110,000.00; and

"WHEREAS, it is contemplated that the company will be in need of additional funds and working capital in excess of $50,000.00; and

"WHEREAS, it is contemplated that the undersigned will loan additional funds to the corporation at a minimum of $52,000.00, to be used for the completion of the cost of the erection of the building and to provide Southwest Film Laboratories, Inc., with needed working capital; and

"WHEREAS, the undersigned have agreed to personally guarantee the the $110,000.00 loan from the Texas Prudential Life Insurance Company and will subject themselves to personal liability for the full amount of said $110,000.00 mortgage; and

"WHEREAS, it is the desire of the parties that any such sums of money loaned by any such stockholder of Southwest Film Laboratories, Inc., up to $52,000.00 shall be frozen and not be repayable until the mortgage indebtedness to the Texas Prudential Life Insurance Company has been repaid or substantially reduced in an amount mutually agreed upon between the parties.

"NOW, THEREFORE, it is agreed between the undersigned as follows:

"IN CONSIDERATION of the personal guarantee by the undersigned of the $110,000.00 note and indebtedness, which will be payable to the order of Texas Prudential Life Insurance Company, and the mutual advantage and benefit flowing one to the other and other good and valuable consideration, it is agreed as follows:

"That the loans of the undersigned to Southwest Film Laboratories, Inc., in the various amounts loaned by the respective parties, aggregating an amount up to $52,000.00 shall be frozen as working capital of Southwest Film Laboratories, Inc., and shall not be payable to the undersigned until the full amount of the $110,000.00 liability to Texas Prudential Life Insurance Company has been repaid in full or in such substantial amount as is mutually unanimously agreed between all of the undersigned parties.

"It is further agreed that the indebtedness to the undersigned from Southwest Film Laboratories, Inc., shall not be assigned, pledged, mortgaged or hypothecated in any manner or amount except with the approval of all of the undersigned and said aforementioned respective liability of Southwest Film Laboratories, Inc., to the undersigned shall not be subject to garnishment, attachment, or assignment."

(The heading and conclusion are omitted.)

In May, 1958 Ziegler mentioned to Hoppenstein that the stockholder loans coming within the terms of the agreement presented an opportunity for tax saving if he cared to create a trust for his daughter and transfer the $19,500 indebtedness to the Trust and let the interest thereon be paid to the Trust and taxed at a lower rate. Ziegler also told Hoppenstein that he planned such a trust for his three children. Hoppenstein made no objection, and said that he thought he could get the other stockholders to agree if maturity of the indebtedness remained unchanged.

Prior to the May conversation mentioned above on November 1, 1957, Ziegler as settlor entered into a trust agreement with his wife, Florence G. Ziegler, and three other individuals, as Trustees, creating three separate and distinct Trusts designated as Regina Gale Ziegler, Trust No. 1, Rosilene Ziegler, Trust No. 1, Ruthann G. Ziegler, Trust No. 1. On the same date his wife Florence G. Ziegler as settlor entered into a trust agreement with Ziegler and the same three individuals named in this Trust, as Trustees, creating three separate and distinct Trusts designated as Regina Gale Ziegler, Trust No. 2, Rosilene Ziegler, Trust No. 2, Ruthann G. Ziegler, Trust No. 2. Some of the powers given the trustees in each of these instruments are in this language:

"The trustees shall have the full power and authority to manage, control, handle, invest and reinvest * * upon such terms and conditions as said trustees, in sole discretion may deem best. * * * appoint, remove and act through agency, managers, and employees, and to confer upon them such power and authority as the trustees may deem necessary or advisable. * * *"

Each Trust was given a capital of $100 by the Trust settlor.

The day each Trust was created the trustees of each executed and delivered to Ziegler written power of attorney authorizing him to:

" * * * act in the administration, management, control and disposition of the properties of the Trusts in accordance with all the powers, rights and authority granted to us collectively under the terms of the Trust Agreement except as expressly limited by the terms of the Trust Agreement. * * *"

On June 24, 1958, Ziegler drew a check on Samuel E. Ziegler, Trustee, payable to Southwest Film Laboratory, Inc., for $10,000 which he signed as trustee. About the same date Ziegler requested a $10,000 corporate check issued to him; the employee addressed advised him that the corporate bank balance was insufficient to pay it. And Ziegler said, "That's all right. I am going to cover it with another check. You make it out to me. In your books set up a new account and call it the Samuel E. Ziegler Trust Account. Mail me the check and in a day or two I will send you a deposit slip showing I deposited the amount. In other words, it is just an exchange of checks." The corporate check was issued to Ziegler, individually. Both checks cleared the banks upon which they were drawn. Ziegler testified that he borrowed money for the Trust to cover the trustee check. The corporate books were changed to show a $10,000.00 indebtedness to S. E. Ziegler, Trustee, under the heading "Loans Payable to Officers". Indebtedness payable to Ziegler was reduced by $10,000.00.

The only other change made in the long term indebtedness the corporation owed the stockholders after execution of the agreement of June 25, 1956, resulted from an agreement of all stockholders to offset certain indebtedness of Hopper and Gans to the corporation. Hoppenstein did not create a trust for his child, and he first knew of the transaction involving the two $10,000 checks sometime in 1959. Hopper became aware of the transaction when he saw the trustee item in a financial statement sometime in November of 1958. Thereupon, Hopper mentioned the trust item to Ziegler and was told by him that, "It doesn't change the position of the loan one iota". At the time of the check transaction Gans had left the employment of the corporation although he continued as a director. He testified he did not know about this change in the indebtedness account until suit was filed.

By appropriate pleading Hoppenstein, Gans and Hopper intervened asking affirmative relief and Ziegler was impleaded as a third party defendant. The result of the case in the trial court and disposition of the appeal makes it unnecessary to detail the pleadings of the parties at this point other than note that the corporation plead as a defense that the indebtedness sued upon was not due. In answer to special issues a jury found that the Trusts loaned $10,000 to the Southwest Film Laboratory, Inc.; that the stockholders of the corporation: (1. Did not agree that Ziegler might withdraw the sum of $10,000.00; (2. Did not voluntarily abandon or waive the contract dated June 25, 1956; (3. Did not lead Ziegler to believe the funds advanced by him on behalf of the Trust would not be subject to the terms and provisions of the mentioned contract; and that the advancement of $10,000 of Trust funds by Ziegler was made in lieu of and in substitution of funds withdrawn by him in a like amount.

Only the appellant Trusts have perfected an appeal. Ten points of error are briefed. Points 5, 6, and 7 present the issues that the contract of June 25, 1956, the so-called "freeze" agreement, was too indefinite and uncertain to be enforceable; that any agreement between Ziegler as Trustee and the corporation using Trust funds for the private advantage of Ziegler was illegal and unenforceable; and that the loan made by the Trust was made with notice to the corporation that the trustee was acting without authority. The other points raise issues of "no evidence" and "insufficiency of the evidence" to support the jury findings and the judgment entered.

The appellants argue in support of their point that the agreement of June 25th, 1956 is too uncertain and indefinite to be enforced, that the instrument does not bind the parties individually nor collectively to loan any definite amount of money to the corporation; and the fact that the parties individually made numerous advances and withdrawals so confuses the status of the many loans and repayments that it is not certain which stockholder loans, including the balances shown due to stockholders in the corporation financial statement of May 31, 1958, are the subject of the "freeze" agreement.

■ There is a certain degree of ambiguity in the instrument as it refers to "contemplated additional loans" in one part, and in another part refers to "loans" in the present and past tense, as though speaking of then completed transactions. From the facts already recited it appears that the parties construed the instrument as controlling the maturity of the indebtedness due to stockholders as shown by the May 31, 1958 financial statement. There is no evidence that repayment to stockholders or withdrawals by stockholders occurred, except by unanimous consent of all stockholders, after the "freeze" agreement was made and before the occurrence made the subject of this suit. The parties gave the instrument a certain and definite construction which was acted upon by them and acquiesced in without question until a short time prior to this suit. See Contracts 13 T.J. (2) 300 Sec. 128; City of Athens v. Andrews, Tex.Civ.

App., 231 S.W.2d 928, err. ref. Under the circumstances shown the instrument is certain, definite and enforceable.

The appellants briefed this case on the theory that Ziegler acted as a trustee in loaning Trust money to the corporation, but it is clear from the evidence that he was in fact an agent of the Trustees of the several Trusts. The language of the several instruments introduced by the appellants as Powers of Attorney clearly reveals that the intention of the instruments was to authorize Ziegler to act for the Trustees. Ziegler's authority to so act, even for those trusts of which he was a co-trustee, has its source in the powers given by such instruments. These instruments were identical in wording and did not purport to vest title to property, or an interest in property, in Ziegler nor to create a relationship in which Ziegler would hold a property interest subject to an equitable obligation to keep or use such interest for the benefit of the Trustees or the Trusts. In support of such construction see definitions and distinctions of these relationships in Agency, 2 Tex.Jur.2d 435, Sec. 1, I Trust and Trustees (Bogart) 67 (2) 15. These documents merely made him an agent of the Trustees, and the duties and liabilities of that relationship is governed by the law of Agency. This is important in resolving questions of ratification.

In their pleadings the Trustees allege that $16,000.00 of Trust funds were loaned to the corporation, and that $6,000 of such loan, together with accrued interest on the whole sum, had been paid at the time suit was instituted. Judgment was asked for the $10,000 balance of the indebtedness and interest accruing after institution of the suit. Such pleadings by the Trustees not only fails to repudiate Ziegler's agency or allege the loans were ultra vires and in violation of the Trust, but on the contrary asserts the existence of such loans and the collection of interest which had accrued on them.

■ The allegations of the pleadings treat as valid the action of Ziegler as the Trustees' agent in making the loan. Under the pleadings of the parties the only controversy concerning the corporation obligation is the date the loan was to be paid. The Trustees contend it was payable on demand. The corporation said that payment was to be controlled by the terms of the "freeze" agreement. In Agency, 2 Tex.Juris. (2), p. 543, Sec. 95 it is said with respect to a suit upon an agent's contract, that: " * * * the principal's suit is in itself ratification of the agreement, and neither pleading nor proof of the adoption of the contract will be required. * * *" See also Lechenger v. Merchants' Nat. Bank of Houston, Tex. Civ.App., 96 S.W. 638, er. ref., 209 U.S. 553, 28 S.Ct. 757, 52 L.Ed. 923, app. dismd. The Trustees having ratified the loan, any contention that Ziegler acted without the Trustees' authority is removed from the case.

■ The pleadings, evidence and findings prevent the Trustees from taking the position in this case that Ziegler obtained private advantage in loaning Trust funds, and that the corporation having knowledge of Ziegler's bad faith could not enforce its agreement with Ziegler respecting maturity of the loan. First, there is no evidence that the corporation officers, or agents, except Ziegler, were aware that the Trusts existed until the switch of funds had been accomplished. There was no opportunity for the corporation, through its agents having authority to deal with the subject to know or have knowledge of Trust provisions or its agent's limitations or agree with him to breach the trust obligation. Ziegler's knowledge is not imputable to the corporation under the facts shown. See Agency 2 T.J. (2) Sec. 187, 193.

■ Reference to the Trust instruments shows that Ziegler as Agent for the Trustees was given great latitude in the investment of the Trusts' funds. This power to invest carried with it necessarily the authority to agree to time of repayment and other terms usually incident to loans of money. The "freeze" agreement in the

light of this record might be construed in such way that maturity of the loan would never occur, that is to say, that if the building indebtedness was never paid or substantially reduced then the loans referred to in the agreement would never be repayable. Assuming such construction is correct, it does not follow that such an agreement is as a matter of law a breach of trust on the part of the Trustees or Ziegler. Ziegler's authority to make the loan and the authority of the Trustees to ratify it are within the express and implied powers granted by the several Trust agreements. The absence of pleadings by the Trustees repudiating Ziegler's agency and asserting that the loan was beyond their powers and constituted a breach of trust strengthens this conclusion.

Consideration of all points leads to the conclusion that no reversible error is shown. All points are overruled. The judgment is affirmed.