W. R. MONTGOMERY, Petitioner,

v.

Charles Edgar RITTERSBACHER et al.,
Respondents.

No. B–160.

Supreme Court of Texas.

Jan. 24, 1968.

Rehearing Denied Feb. 28, 1968.

Kelley, Looney, McLean & Littleton, L. C. McLean, Edinburg, for petitioner.

Aldrich, McDonald & Stewart, B. R. Stewart, Edinburg, for respondents.

SMITH, Justice.

Petitioner, W. R. Montgomery, brought this suit to establish his right to accumulated and prospective royalty under an oil, gas and mineral lease. The material facts are undisputed. The trial court in a non-jury trial rendered judgment that Montgomery take nothing. The Court of Civil Appeals affirmed. 410 S.W.2d 925. We reverse the judgments of the courts below and remand the cause to the trial court with instructions.

In 1945 Montgomery conveyed approximately eighty (80) acres of land, designated in the record as "First Tract," to Respondents' predecessors in title but reserved for himself a non-participating royalty interest.[1] The title to the property, including the royalty interest not reserved by Montgomery, became vested in Respondents, who also owned land hereinafter designated as "Second Tract" which is contiguous to "First Tract." Montgomery owned no interest in this "Second Tract." Respondents were the owners of the executive rights under "First Tract" and "Second Tract" as well as some of the royalty rights under "Second Tract" and the royalty rights not owned by Petitioner under "First Tract."

In 1953 Respondents filed for record an oil, gas, and mineral lease dated September 4, 1951, covering both "First Tract" and "Second Tract."[2] Since Respondents held

1. The interest Montgomery reserved is as follows: "Out of the grant hereby made there is, however, excepted and reserved unto the Grantor herein, his heirs and assigns, forever, the equal one-half part of the usual royalty of one-eighth of all the oil, gas and other minerals on, in and under the premises hereby conveyed, such one-half part to be paid and delivered under and by the terms of the present or any future oil, gas and mineral lease or leases outstanding on said premises. But Grantor, his heirs and assigns, shall not participate in, and no reservation is here made of the lease or annual rentals and/or bonus money received by Grantee, his heirs and assigns for any future lease or leases given on said premises, and it is understood and agreed that it shall not be necessary for said Grantor, his heirs and assigns to join in any such lease or leases so made."

2. The lease covered a total of 204.19 acres —"First Tract" consisting of 80 acres and "Second Tract" consisting of 124.19 acres.

the executive rights of "First Tract," it was not necessary for Montgomery to join, nor did he, in the lease executed by Respondents. The lease contained a pooling clause whereby lessee was permitted to combine the leasehold estate with any other mineral estate in order to create appropriate operating units. The lease further provided that production on any tract of land within any unitized area formed under the pooling provision should constitute full compliance with the development, drilling, and producing obligations expressed in the lease. Additionally, the lease contained the following entirety clause:

"If the leased premises are now or shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease, and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage."

The lessee, Sun Oil Company, formed several units out of the original leased acreage by combining some of the land under the lease with land Sun held under other leases. A portion of "Second Tract" [3] was unitized with a tract known as the Crutchfield tract, land not owned by Respondents and not covered by the lease. A producing well was completed on the Crutchfield tract in October, 1956, from which commercial production was begun in May, 1958. "First Tract" was placed in a unit on which a dry hole was drilled in July, 1961.

Montgomery brought this suit in May, 1964, against Sun Oil Company, the lessee,[4] and Respondents, the holders of the executive rights, claiming by virtue of the entirety clause a share of the royalties which were accruing under the lease. Since "Second Tract" is in the Crutchfield pool, it receives a proportionate share of the royalties that are produced from the Crutchfield well. This royalty, according to the terms of the entirety clause in the lease, is "divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage." Consequently, Montgomery seeks the proportion of the royalties accruing under the lease that his non-participating interest bears to the leased acreage. He contends that the entirety clause in the lease by its express terms applies to and includes his non-participating royalty interest; and since he has ratified the lease, Respondents cannot now deny the effect of the contract entered into between Respondents and Sun.

◼ Respondents contend and the Court of Civil Appeals has held that Respondents did not have the power to bind Montgomery's non-participating royalty interest with an entirety clause; Montgomery did not properly ratify the lease; and, Montgomery did not qualify to recover as a third party beneficiary of the lease. We agree that the Respondents, the holders of the executive rights, did not have the power to bind Montgomery's non-participating royalty interest by virtue of the entirety clause alone, but do not agree with their contention that the Petitioner has not "properly" ratified the lease. We are of the opinion that the enlargement or diminishment of the rights of a prior non-participating royalty owner can be accomplished by the holder of the executive rights executing an oil, gas, and mineral lease which includes either a pooling clause or an entirety clause, provided the non-participating owner ratifies such action.

---

3. Eighty acres of "Second Tract" were placed in the Crutchfield unit—making a total of 320 acres in that unit. The remainder of "Second Tract," 44.19 acres, and "First Tract" were not placed in the Crutchfield unit.

4. Sun Oil Company tendered Montgomery's claimed share of the royalty payments into court and is involved in this controversy only as a nominal party.

## ENTIRETY CLAUSE

■■ This Court has held that pooling effects a cross-conveyance among the owners of minerals under the various tracts of royalty or minerals in a pool so that they all own undivided interests under the unitized tract in the proportion their contribution bears to the unitized tract. Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472 (1942). The mere reservation of a non-participating royalty interest under a tract does not show that the royalty owner intended to give to the holder of the executive rights the power to diminish the royalty owner's interest under that tract. Consequently, pooling on the part of the holder of the executive rights cannot be binding upon the non-participating royalty owner in the absence of his consent. Minchen v. Fields, 162 Tex. 73, 345 S.W.2d 282 (1961); Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43 (1943); and Nugent v. Freeman, 306 S.W.2d 167 (Tex. Civ.App.—Eastland 1957, writ ref'd n. r. e.), cited with approval in Minchen v. Fields, supra. We can see no distinction between the pooling clause, insofar as it has the effect of changing the aggregate ownership of the non-participating royalty owner, and the entirety clause, which, in effect, would allow the holder of the executive rights to either diminish or enlarge the ownership of that of the royalty owner. In either case, the consent of the owner must be obtained.

Respondents argue that although the lease in question covered Montgomery's non-participating interest, the entirety clause in the lease did not. They contend that since they did not have the power to diminish Montgomery's interest in "First Tract" and thereby to obtain a proportional share of any royalties accruing to that tract, they did not intend for Montgomery to use the entirety clause to share proportionally in royalties accruing to their tracts. Furthermore, Respondents claim that one of the reasons that they inserted a proportional reduction clause in the lease was to make the entirety clause operative only on those interests which they had authority to cover by the entirety clause.

■ We are unable to agree with Respondents' contention. The lease executed by Respondents and the original lessee explicitly described the entire tract in which Montgomery had a non-participating interest as being covered by the lease. The unambiguous entirety clause clearly indicates that it was to apply to all the interests covered by the lease. The clause points out that even if the premises are owned in severalty *at the time of the execution of the lease*, as the premises were in this case, "the [leased] premises, nevertheless shall be developed and operated *as one lease*, and *all royalties* accruing hereunder shall be treated as an entirety and shall be divided among and *paid to such separate owners in the proportion that the acreage owned by each bears to the entire leased acreage.*" (Emphasis added.) This Court has held that an "are now" entirety clause as was contained in the present lease applies to minerals held in severalty at the time of the execution of the lease. Thomas Gilcrease Foundation v. Stanolind Oil & Gas Co., 153 Tex. 197, 266 S.W.2d 850, 853 (1954).

■ Respondents, in exercising the executive rights, had a duty to protect the non-participating royalty owner. See Jones, Nonparticipating Royalty, 26 Texas L.Rev. 569, 580–85 (1948) and Elliott, The Executive Right, 42 Texas L.Rev. 865 (1965). Had Respondents not intended to include Montgomery's non-participating interest within the provisions of the entirety clause, they could have easily taken affirmative steps to exclude the interest from the operations of the clause. The insertion of a proportionate reduction clause in the lease does not indicate an intention to exclude "First Tract" from the express terms of the entirety clause. The lessee, in this case, operated as if "First Tract" was covered by all of the terms contained in the lease. "First Tract" was placed in a unit and a well was drilled on that unit, even though the lessor could not pool the non-participat-

ing royalty interest. Therefore, we view it as conclusively established that in executing the lease in question, Respondents purported to bind Montgomery's interest by the entirety clause—whether or not they had the authority to do so.

## RATIFICATION

■ This suit was filed on May 12, 1964. Prior to the filing of suit, Petitioner claimed and made demand upon Sun Oil Company for his pro-rata share of royalties payable under the terms of the lease. The parties stipulated that, "W. R. Montgomery by his attorney informed a representative of Sun Oil Company during the last week of January, 1959, that the said W. R. Montgomery was offering to sign a ratification of the Charles E. Rittersbacher, et al., lease to P. V. Hitt, dated September 4, 1951 [the lease in controversy] * * *." The parties agreed that the affidavit of Montgomery would be acceptable in lieu of requiring him to appear in person as a witness. In the affidavit, Montgomery stated: "I am and have been willing to ratify the said lease and have offered and agreed with Bettis & Shepherd, Sun Oil Company's predecessor in title, as well as Sun Oil Company, to execute any division order or ratification necessary or proper with regard to any royalty interest, if such be needed." Respondents contend that this evidence does not establish actual ratification, but only amounts to an offer to make the ratification—the contention being that an offer, absent acceptance, does not meet the requirement that there must be actual ratification. Respondents further take the position that Montgomery's offer to ratify was conditional and was never fully binding upon Montgomery. This evidence demonstrates Montgomery's intention to ratify the lease, and by filing suit to enforce the lease as written, Mongomery, as a matter of law, has exercised his option to ratify the lease. We think that the manner in which he has exercised his option is analogous to the manner by which a principal can ratify the unauthorized actions of an agent—bringing a suit to enforce the unauthorized act. In such a situation it has been held that the bringing of the suit constitutes an implied ratification of the unauthorized act. Lyons v. Texorado Oil & Gas Co., 91 S.W.2d 375, 377 (Tex.Civ. App.—Amarillo 1935, writ ref'd); Ziegler v. Southwest Film Laboratory, Inc., 351 S.W.2d 636, 641 (Tex.Civ.App.—Texarkana 1961, writ ref'd n. r. e.); Commercial Standard Ins. Co. v. Nelson Mortg. Co., 138 S.W.2d 169, 173 (Tex.Civ.App.—Eastland 1940, writ dism'd jdgmt cor.); James v. Klar & Winterman et al., 118 S.W.2d 625, 627 (Tex.Civ.App.—Dallas 1938, no writ); Steele v. Butler, 227 S.W. 506, 510 (Tex.Civ.App.—Amarillo 1921, no writ); Lechenger v. Merchants' Nat. Bank, 96 S.W. 638, 643 (Tex.Civ.App.—Houston 1906, writ ref'd); 2 C.J.S. Agency § 61, 2 Tex.Jur.2d Agency § 95.

■ This Court has never been called upon to decide the question of whether a holder of non-participating royalty has an option to make an entirety clause operative on his interest. We think that the non-participating royalty owner, so far as the existence of an option is concerned, occupies a comparable position to that of a cotenant under a lease made by his cotenant or a non-participating royalty owner under a pooling agreement made by the holder of the executive rights. As to the cotenant, it has been held that he has the right to ratify or repudiate a lease made by his cotenant which covers his interest. Ryan Consolidated Petroleum Corp. v. Pickens, 155 Tex. 221, 285 S.W.2d 201 (1955); Loeffler v. King, 149 Tex. 626, 236 S.W.2d 772 (1951); Gill v. Bennett, 59 S.W.2d 473 (Tex.Civ.App.—El Paso 1933, writ ref'd); Van Deventer v. Gulf Production Co., 41 S.W.2d 1029 (Tex.Civ.App.—Beaumont 1931, writ ref'd); Texas & Pacific Coal & Oil Co. v. Kirtley, 288 S.W. 619 (Tex.Civ.App.—Eastland 1928, writ ref'd); Duval v. W. T. Carter & Bro., 207 S.W.2d 962 (Tex.Civ.App.—Beaumont 1948, writ ref'd n. r. e.). Likewise, in the pooling

area, if a non-participating royalty owner ratifies a pooling agreement, either by joining in the execution of the agreement or by accepting royalties from the pool, his interest is bound by the pooling agreement. Minchen v. Fields, supra, 162 Tex. at 77, 345 S.W.2d at 285; Guaranty Nat. Bank & Trust Co. v. May, 395 S.W.2d 80, 82 (Tex.Civ.App.—Waco 1965, writ ref'd n. r. e.); Nugent v. Freeman, supra, 306 S.W.2d at 170–171. Therefore, we hold that the non-participating royalty owner has the option to ratify or repudiate a lease containing provisions which as to his interest the holder of the executive rights had no authority to insert in the lease.

■ Montgomery, in bringing this suit, seeks two things under the lease—royalties that have already accrued and royalties that are to accrue in the future. We have held that Montgomery has ratified the lease in question by filing suit; consequently, he is only entitled to receive royalties accruing from and after May 12, 1964, the date this suit was filed. In this connection, we point out that Montgomery, having thus ratified the lease, is as much bound thereby as if he had joined in the original execution thereof. As long as the lease is in force, he is not free to claim his full ½ non-participating interest under "First Tract."

We come now to the judgment to be entered. The cause must be reversed and remanded to the trial court with instructions. There is an agreed order in the record which is to be used by the trial court in determining the percentage of royalty to be awarded Montgomery and the amount of accrued royalty in dollars and cents due him from May 12, 1964. The order, Plaintiff's Exhibit No. 7, reflects that the Plaintiff and Defendants agreed and the court found that if successful in this suit, Montgomery would own 19.59% of the total royalty payable on the production allocated to the 80 acres of "Second Tract" placed in the Crutchfield Gas Unit;

that the interest amounts to .006122 royalty interest of the production from said unit; and that the accrued royalty allocable to the Montgomery interest amounted to $1706.05 on runs from date of first production through October 31, 1964. Under our holding, Montgomery will not be entitled to royalty accruing prior to May 12, 1964, the date of filing of suit. The amount of money due Montgomery accruing under the lease subsequent to May 12, 1964, is to be determined in accordance with the above mentioned order, other pertinent stipulations in the record, and this opinion.

Reversed and remanded to the trial court with instructions. All costs are adjudged against the Respondents.

Dissenting opinions by CALVERT, C. J., and GRIFFIN and WALKER, JJ.

CALVERT, Chief Justice (dissenting).

I join in the dissenting opinion filed by Justice Walker. I append the following comment.

The holding of the court is that the filing of suit by Montgomery on May 12, 1964, constituted a ratification of the lease. The parties stipulated that a well was completed as a producer on the Crutchfield Unit on October 9, 1956, and that shut-in royalty was paid from that date until May, 1958, when actual production was begun. The record reflects that Montgomery knew as early as July, 1957, that the well had been completed. The record thus reflects that Montgomery waited nearly seven years before he ratified the lease.

By agreeing that ratification has been effected by the judgment herein, I do not wish to be understood as agreeing that a non-participating royalty owner, with full knowledge of his rights, cannot lose his right to ratify through laches. See Nugent v. Freeman, 306 S.W.2d 167 (Tex.Civ.App.—Eastland 1957, n. r. e.). There was no plea of laches in this case.

GRIFFIN, Justice (dissenting).

I respectfully dissent. The entirety clause in a lease was never intended to convey and does not convey any interest owned by any land owner or mineral owner in any tract of land in any lease. It merely provides for each person to receive such part of the common production as was the ownership of the one who receives in his original tract of land or minerals.

WALKER, Justice (dissenting).

In my opinion petitioner has heretofore done nothing that would irrevocably bind him to the terms of the lease, and he will not be bound thereby until his tender of ratification is made effective by the judgment rendered in this case. I would hold that he is entitled to his proportionate share of royalties accruing from and after the date of judgment.

CALVERT, C. J., joins in this dissent.