**GILLRING OIL COMPANY, Appellant,**

v.

**Dan A. HUGHES, et al., Appellees.**

**No. 8533.**

Court of Civil Appeals of Texas, Beaumont.

June 11, 1981.

Rehearing Denied July 29, 1981.

J. M. Burnett, Corpus Christi, for appellant.

Thomas W. Reavley, Austin, Tex., for appellees.

CLAYTON, Justice.

Appellant, Gillring Oil Company, filed this suit against appellees, seeking a recovery of certain royalty and working interests and a declaration of its rights to such interests in the future in and to the gas well on a gas producing unit known as the Wanda Wolter Unit No. 1 in Nueces County. In a non-jury trial, a take-nothing judgment was entered from which this appeal has been perfected.

Appellant brings forward fifteen points of error and has grouped the first eleven points together for its argument. Under these points appellant agrees that its right to recover in this action depends upon the interpretation and legal effect of certain

instruments executed by the parties with reference to royalty interests and working interests of the production of the gas well in question.

All the parties to this action are joint working interest owners in a well known as the Wolter No. 1, located in Nueces County. Appellant brought this action against all the remaining working interest owners seeking a judgment that it is entitled to a larger percentage of income from the well than the share that appellees have determined to be appellant's share.

On July 19, 1976, appellant and appellees entered into an operating agreement describing 401 acres of land for the purpose of exploring and developing all or a portion of such land for oil and gas purposes. In forming this 401 acre operating unit, each party to this agreement contributed certain acreage to the "Unit Area" defined in the agreement. Certain exhibits to the agreement state that appellant contributed an undivided one-fourth mineral interest in a 100 acre tract. Exhibits also show the other parties to the agreement contributed oil and gas leasehold estates.

Under the operating agreement, appellant owned a one-eighth royalty in and to its ownership contribution; the remaining seven-eighths of the total ownership constituted a working interest. In addition, the agreement provides that each party to the agreement shall retain as an overriding royalty any ownership it has in the property it contributes in excess of a 75 percent net revenue interest. This operating agreement sets forth the respective percentage or fractional interest of all parties to this agreement.

The operating agreement provides:

"[A]ll costs and liabilities incurred in operations under this contract shall be borne and paid, and all equipment and material acquired in operations on the Unit Area shall be owned, by the parties as their interests are given in Exhibit 'A.' All production of oil and gas from the Unit Area, subject to the payment of lessor's royalties, shall also be owned by the parties in the same manner."

Appellant's interest is stated as being 6.23 percent, which was computed by dividing appellant's interest contribution to the Unit Area (¼ of 100 acres, or 25 acres) by the total acreage in the Unit Area (401 acres).

After the Wanda Wolter Well No. 1 was drilled and completed, the parties to the operating agreement entered into a "Designation of Gas Unit" which defined a 320 acre producing unit around the well. The Gas Unit Designation provides that the parties declare a 320 acre unit designated as the Hughes-Wolter Gas Unit No. 1 and they "hereby pool and combine all the gas and gaseous substances, including gas condensate, together with all minerals and royalty rights hereunder."

It is undisputed that appellant's future working interest from the production of the well would be 7.8125 percent of production if determined solely by the provisions of the Gas Unit Designation instrument. If determined by the provisions of the operating agreement and the Gas Unit Designation instruments, then its revenue interest would be 6.6256 percent of production. The trial court found appellant was entitled to receive 6.6256 percent of production which was the percentage appellant has been receiving.

It is contended by appellant that the operating agreement, which states its working interest in the production of the well is based upon a 401 acre unit, has been amended by the Gas Unit Designation and that it is now entitled to receive a working interest of 7.8125 percent of production which is based upon a 320 acre unit.

■ Appellant's working interest contribution under the operating agreement entitled it to a working interest of 6.23 percent in the 401 acre unit. This agreement was in effect a unitization of the tract conveying an interest in realty. *Renwar Oil Corp. v. Lancaster*, 154 Tex. 311, 276 S.W.2d 774 (1955), with income to be paid on the basis of each party's acreage contribution to the whole unit. *Veal v. Thomason*, 138 Tex. 341, 159 S.W.2d 472, 476 (1942); *Montgomery v. Rittersbacher*, 424 S.W.2d 210, 213 (Tex.1968). Income is to be paid to each

party according to his ownership in the entire tract. *Rankin v. Naftalis*, 557 S.W.2d 940, 942 (Tex.1977).

■ Appellant owned all the royalty interest in 25 net acres (undivided ¼ of 100 acres), all of which was included within the 320 acre unit as described and contained in the Gas Unit Designation. According to the operating agreement that royalty interest was entitled to share in the total production from the 320 acre unit in proportion to its percentage of total surface acres in the unit. Therefore, appellant's royalty share of the income from the well would be equal to 25/320 or .078125. Since the royalty portion of production from the well owned by appellant amounted to 25 percent, appellant's net revenue interest attributable to its royalty interest ownership would equal $.078125 \times .25$ or .019531.

As to working interest, however, appellant did not own 25 acres in the 320 acre unit at the time it signed the Gas Unit Designation. By executing the operating agreement, appellant had relinquished 75 percent of its ownership in the 25 acres in exchange for an undivided 6.23 percent working interest in the entire 401 acre Operating Unit. Therefore, it had an undivided 6.23 percent interest in each acre within the 401 acre unit, including the 320 acres designated as the Hughes-Wolter Gas Unit No. 1. Since appellant owned and contributed only 6.23 percent of the working interest acres to the 320 acre unit, it only became entitled to 6.23 percent of the income attributable to the working interest. Multiplying this share of working interest (.0623) by the total portion of revenue attributable to the working interest (.75) yields a net revenue interest attributable to appellant's working interest of .046725. Adding this figure to the net revenue interest attributable to appellant's royalty ownership (.019531) gives a total appellant interest of .066256 or 6.6256 percent, which is the exact amount which appellant has been receiving.

■ Appellant contends the operating agreement was amended so as to change its working interest from 25/401 to 25/320 by a letter written by its president to one of the parties to the agreement with copies of such letter being sent to all other parties. This letter, written July 22, 1976, states:

"It is our understanding that the form of oil and gas lease attached as Exhibit 'B' is to provide for 320-acre pooling rather than 640 acres, and it is also our understanding that all the parties to the Operating Agreement ... will jointly agree on what acres will be pooled into a producing unit around a producing well."

Appellant contends this letter was "a contemporaneous writing to and is expressly part of the operating agreement." We do not agree. The agreement was dated July 19, 1976, and was effective as of the date on its face, not the date of the last signature. *Willson v. Superior Oil Co.*, 274 S.W.2d 947, 951 (Tex.Civ.App.—Texarkana 1954, writ ref'd n. r. e.). The letter was written three days subsequent to the effective date of the instrument and, therefore, could not be considered as a contemporaneous writing to be construed with and made a part of and amending the operating agreement. Moreover, the language of the letter itself does not disclose an intent to amend the operating agreement. If the letter was intended as a proposed amendment, the language used should have indicated a clear intent to amend. *Paine v. Moore*, 464 S.W.2d 477 (Tex.Civ.App.—Tyler 1971, no writ). This letter did not amend or cancel the operating agreement.

We have carefully considered all other points of error urged by appellant, and finding them to be without merit, they are overruled.

The judgment of the trial court is affirmed.

AFFIRMED.