ON REHEARING EX MERO MOTU
On rehearing ex mero motu, the original opinion in this case is withdrawn and the following is substituted therefor:
Rafeard Perkins and Ruby Z. Perkins filed a declaratory judgment action against Calvin F. Burnett and Lenora S. Burnett seeking to quiet title in and to an undivided 3/32 interest in all minerals produced from a certain tract of land in Lamar County, Alabama, and a declaration that they are entitled to a pro rata share of any royalty paid for oil and gas upon the drilling units of which the described lands are a part. After hearing the evidence without a jury, the trial court entered judgment for the Perkinses, holding that they are entitled to the claimed royalty. The Burnetts' motion for new trial was denied.
The issues presented for review are: 1) whether the deed executed by the Perkinses effectively reserved an undivided one-half of the royalty interest; 2) whether the grant of executive rights to the Burnetts included the right to pool the royalty interest of the Perkinses with those of others; and 3) whether by filing suit the Perkinses have ratified the Burnetts' lease and thus become subject to the pooling instituted by lessee Alagasco Energy Company, Inc. ("Alagasco").
On February 28, 1978, the Perkinses conveyed to the Burnetts a tract of approximately 60 acres of land described as the SW 1/4 of the SE 1/4 and the W 1/2 of the SE 1/4 of the SE 1/4 of Section 33, Township 14 South, Range 14 West, Lamar County, Alabama ("the subject tract"). The deed contained the following reservation:
 "The Grantors hereby reserve unto themselves, for and during their joint lives, and on the death of either of them, *Page 108 
to the survivor, until the death of the survivor, an undivided one-half interest in and to any mineral royalty which might be derived from the actual drilling of an oil and gas well on the property hereinabove described. In other words, should there be mineral production from exploration done on the above land, then the Grantors herein are to receive one-half of same as long as either of them might live. This reservation of royalty is in no way to be construed as a limitation on the part of the Grantees to lease said lands for mineral exploration and specifically exempts them from having to secure any concurrance [sic] to lease from the Grantors."
On February 8, 1985, the Burnetts executed a mineral lease to Alagasco. The lease contains a clause with the following language:
 "Lessee is hereby granted the right, at its option, to pool or unitize all or any part of said land and of this lease as to any or all minerals or horizons thereunder with other lands, lease or leases, or portion or portions thereof, or mineral or horizon thereunder. . . . Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted under this lease."
The lease provides for a 1/8 royalty payment in the event of production.
The South Brush Creek Oil Field of Lamar County, Alabama, created in June 1985, by the State Oil and Gas Board of Alabama at the request of Alagasco pursuant to rights acquired by lease, encompasses all of Section 33, Township 14 South, Range 14 West, and other lands. The South Brush Creek Oil Field is divided into units of 80 acres each, each unit a combination of two adjacent governmental survey quarter-quarter sections. The State Oil and Gas Board promulgated Special Field Rules regulating, inter alia, spacing of wells for the newly created field. The regulations created the two 80-acre drilling units that contain portions of the subject tract; the western unit, consisting of the W 1/2 of the SE 1/4 of Section 33, and the eastern unit, consisting of the E 1/2 of the SE 1/4 of Section 33. Pursuant to the spacing requirements of one well per drilling unit, a well has been drilled on each unit and each is producing oil. No well is actually located on the subject tract.
The Perkinses and the Burnetts collectively own all minerals under the SW 1/4 of the SE 1/4 of Section 33, or half the minerals under the western unit of the South Brush Creek Oil Field. The Perkinses and the Burnetts also collectively own all the minerals under the W 1/2 of the SE 1/4 of the SE 1/4 of Section 33, or one-fourth of the minerals under the eastern unit of the South Brush Creek Oil Field.
The Burnetts contend that the Perkinses are not entitled to share in the royalties produced by the South Brush Creek Oil Field because the production is not the result of a well "actually drilled" on the subject tract, as provided in the deed. They also cite cases from Texas as authority for the proposition that the grant of a power to lease does not include the power to pool the grantors' royalty interest with others. Finally, the Burnetts argue that the Perkinses are precluded from sharing in the benefits of the pooling because of their failure to join in or ratify the lease executed between the Burnetts and Alagasco.
The Perkinses contend that the pooling of units in the South Brush Creek Oil Field allows the mineral owner to share pro rata in the production according to acreage, whether or not the well hole was drilled through the surface actually overlying the mineral ownership. They also contend that the conveyance to the Burnetts with a reservation of royalty has the effect of placing the Burnetts in a trust relationship with the Perkinses, with the responsibility to exercise good faith in causing the exploration that will result in production. Finally, the Perkinses argue that a deed should be construed so as to give effect to the intent of the parties, especially that of the grantor.
The deed in question, taken as a whole, expresses an intention to reserve from the grant an interest in the oil and gas underlying *Page 109 
the tract in question, not simply an interest in oil and gas produced from a well on that tract. To construe the deed otherwise would effectively preclude the Perkinses from ever receiving royalties therefrom, because of the pooling agreement entered into by the Burnetts and Alagasco and sanctioned by the State Oil and Gas Board. It is unlikely that the Perkinses intended or even envisioned such a construction.
We find no cases in Alabama dealing with the issue of whether executive rights include the power to pool the interests of nonparticipating royalty owners. The Burnetts cite cases from Texas holding that executive rights or the power to lease does not include the power to pool without consent of the royalty owner. Mathews v. Sun Oil Co., 425 S.W.2d 330 (Tex. 1968); Montgomery v. Rittersbacher, 424 S.W.2d 210
(Tex. 1968). The rule requiring a specific grant of the power to pool from the royalty owner is premised upon the notion that a pooling of interests reduces the royalty from all production from the individual tract to a pro rata share of the production from the entire pool. There is, however, authority from other jurisdictions holding that the power to lease does include the power to pool. 2 H. Williams and C. Meyers, Oil and GasLaw, § 339.3(7) (1986).
Assuming, without deciding, that the Burnetts did not obtain the right to pool from the grant in the deed, the question then becomes whether any of the Perkinses' actions could be considered consent to or ratification of the pooling agreement. The Perkinses were not parties to the lease executed February 8, 1985. If the Burnetts did not have the power to pool the Perkinses' interest, the Perkinses had an option to either ratify or repudiate the lease, thereby controlling its effect on their rights in the royalties from the subject tract. It is undisputed that they did not repudiate the lease. It is argued, however, that they also did nothing to ratify the lease. Since no payments have yet been made, the Perkinses could not be deemed to have ratified the lease by accepting pro rata royalty payments from tracts in which they have an interest other than the tract in question here; in other jurisdictions such an acceptance of payments has been required in order to give rise to an estoppel theory. Bi-County Properties v.Wampler, 61 Ill. App.3d 799, 378 N.E.2d 311 (1978);Dobbins v. Hodges, 208 La. 143, 23 So.2d 26 (1945);Leopard v. Stanolind Oil Gas Co., 220 S.W.2d 259
(Tex.Civ.App. 1949).
In Montgomery v. Rittersbacher, supra, the Texas Supreme Court, in a case similar to the instant case, held that "by filing suit to enforce the lease as written, Montgomery, as a matter of law, has exercised his option to ratify the lease." The court continued: "We think that the manner in which he has exercised his option is analogous to the manner by which a principal can ratify the unauthorized actions of an agent — bringing suit to enforce the unauthorized act. In such a situation it has been held that the bringing of the suit constitutes an implied ratification of the unauthorized act."424 S.W.2d at 214 (citations omitted).
We therefore hold that, even if the Burnetts did not have the power to pool the Perkinses' interest, the Perkinses ratified the lease by filing this action seeking royalties from the production under the lease, thus indicating an intention to be bound by the terms of the pooling agreement and to be entitled to the advantages as well as subject to the disadvantages of that agreement. As a consequence, the Perkinses are entitled to receive royalties accruing from production under the lease.
The judgment of the trial court is hereby affirmed.
ORIGINAL OPINION WITHDRAWN ON REHEARING EX MERO MOTU; OPINION SUBSTITUTED; AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur. *Page 110